Nos. 87,763
88,275

STATE OF KANSAS, *Appellant/Cross-appellee*, v. COY MATHIS,
*Appellee/Cross-appellant*.

(130 P.3d 14)

Opinion filed March 17, 2006.

*Sheryl L. Lidtke*, assistant district attorney, argued the cause, and *Nick A. Tomasic*, district attorney, and *Phill Kline*, attorney general, were with her on the briefs for appellant/cross-appellee.

*James L. Daniels*, of Fulcher LaSalle Brooks & Daniels, LLC, of Kansas City, Missouri, argued the cause and was on the briefs for appellee/cross-appellant.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Coy Mathis was charged with two counts of abuse of a child and one count of felony murder for the death of the child. At the conclusion of the State's evidence, the trial court dismissed one of the counts of abuse of a child finding that that charge had merged with the felony-murder charge. The State appealed that ruling on a question reserved. K.S.A. 2005 Supp. 22-3602(b)(3). The State's appeal was assigned case number 87,763.

Mathis was found guilty by a jury of felony murder and not guilty of the remaining count of abuse of a child. He was sentenced to life imprisonment with no eligibility for parole for 20 years. Mathis appealed his conviction.

This court transferred Case No. 87,763 from the Court of Appeals. K.S.A. 20-3018(c). We then consolidated No. 87,763 and No. 88,275 and designated the State the appellant/cross-appellee and Mathis the appellee/cross-appellant.

In September 2003, Mathis filed a motion seeking remand to the trial court for determination of ineffective assistance of counsel, an issue raised on appeal that was not raised previously in the trial court. The court granted his motion. Evidence and arguments were heard by the trial judge in April and July 2004. The trial judge determined that Mathis had not been denied effective assistance of counsel. Each party filed a supplemental brief in this court addressing the ineffective assistance of counsel issue.

Prior to the remand hearing on ineffective assistance counsel, defendant filed an action in the district court pursuant to K.S.A.

60-1507. At the remand hearing, the trial court stated that Mathis "essentially raised the same issue" in the 60-1507 action "so we will be hearing evidence and the Court will make a ruling as to both cases." In addition to concluding that trial counsel's performance was not deficient, the trial court stated that it "denied" defendant's K.S.A. 60-1507 action. The supplemental briefs on the issue of ineffective assistance of counsel treat the issue principally as one of collateral review. Notwithstanding that, the K.S.A. 60-1507 issue will be considered here as part of the direct appeal.

The State's appeal raises the question of whether the district court erred in dismissing one count of abuse of a child as merging with the felony-murder charge.

Mathis raises five issues in his cross-appeal:

1. Whether the trial court abused its discretion in denying defendant's motion for new trial based on juror misconduct;

2. Whether the evidence was sufficient to sustain the conviction;

3. Whether the trial court abused its discretion in admitting certain evidence;

4. Whether defendant was denied effective assistance of counsel at trial; and

5. Whether defendant was denied a fair trial by cumulative errors.

On November 30, 2000, Ikesia Scruggs (Ikesia) picked up her 2-year-old son, C.S., from day care at approximately 3:50 p.m. C.S. had no apparent injuries at that time. C.S. was active, energetic, and as usual had a big appetite. Ikesia and C.S. spent the next several hours at her grandmother's before picking up Mathis at approximately 7 p.m. When C.S. was put to bed at approximately 9 p.m., he had no visible injuries and appeared fine. Mathis and Ikesia had no visitors that night and went to bed around 11 p.m.

The next morning, December 1, Ikesia got up at approximately 7:15 a.m., went into C.S.'s room, changed his diaper, and turned on the television in C.S.'s room. C.S. stayed in bed. When Ikesia was ready to go to work, C.S. was still in bed. C.S. had had a cold for approximately a week, but, according to Ikesia, C.S. was his "normal energetic self." When Ikesia went to work, rather than taking C.S. to day care, she left C.S. home with Mathis.

Ikesia worked with a partner cleaning houses in Kansas City and Leavenworth from approximately 8:15 a.m. to 3:50 p.m. on December 1. When she arrived home about 4 p.m., Mathis was lying on the sofa watching television. Ikesia did not see C.S., but thought he was in his bedroom where he stayed when Mathis watched him. Mathis told her that C.S. had been acting like a sissy all day.

Mathis requested Ikesia to go out and purchase some marijuana for him. She did. Ikesia also bought gas and cashed her check prior to returning to her apartment.

When she returned at approximately 5 p.m., Mathis was in the shower. Ikesia looked in on C.S. C.S. was limp, and his eyes were rolling. Ikesia observed numerous red dots on C.S.'s belly that had not been there that morning. Ikesia drove C.S. to the hospital.

C.S. was admitted to the emergency room at Providence Medical Center at 5:32 p.m. C.S.'s breathing was very slow and labored, and he barely had a pulse. C.S. was cyanotic, unresponsive to stimuli, and within minutes suffered a full cardiopulmonary arrest. It took approximately 22 minutes of resuscitation to restore C.S.'s heartbeat and blood pressure. C.S. had bruising on his face, chest wall, abdomen, and back. The bruises did not occur where CPR was performed.

C.S. was transferred to Children's Mercy Hospital just prior to 8 p.m. on December 1. The admitting doctor noted a significant amount of bruising, including circular bruises on C.S.'s lower chest and upper belly that were not the result of resuscitation. A CT scan performed that night indicated an injury to C.S.'s liver, spleen, and kidney. C.S.'s belly was extended from internal bleeding. C.S.'s injuries were consistent with blunt abdominal trauma, not with falling on a toy or against a table. The trauma was most likely inflicted 6 to 8 hours prior to C.S.'s admission to Providence Medical Center. C.S. died on December 5.

An autopsy confirmed that C.S. suffered severe internal injuries and internal bleeding. The cause of death was determined to be multiple blunt force blows to the abdomen, delivered with a force comparable to an automobile accident.

We first consider the State's appeal on a question reserved.

The State charged Mathis in Count I with felony murder with the underlying felony of abuse of C.S. between December 1 and 5, 2000, and in Count II with abuse of C.S. on or about December 1, 2000, and in Count III with abuse of C.S. between August 1, 2000, and December 1, 2000. The jury acquitted Mathis of abuse of C.S. between August 1 and December 1. The trial court found that the acts alleged in Count II merged with the Count I felony murder and dismissed Count II at the close of the State's evidence.

Mathis contends that the State's appeal should be denied because that resolution of the State's question depends on the unique circumstances of this particular case. It is long-established that the purpose of a State's appeal on a question reserved is to provide an answer to a question of statewide importance that will aid in the correct and uniform administration of the criminal law in future cases. See, *e.g.*, *State v. Roderick*, 259 Kan. 107, 108, 911 P.2d 159 (1996). The court will decline to entertain questions reserved by the State that have insufficient statewide importance. *State v. Craig*, 254 Kan. 575, 576, 867 P.2d 1013 (1994). The question here hinges on the peculiar factual circumstances in this case and not a question of statewide importance so as to warrant the court's consideration on the appeal as a question reserved. We therefore decline to answer the question reserved and dismiss the State's appeal.

We turn now to the issues raised in the defendant's cross-appeal.

## 1. DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING MATHIS' MOTION FOR NEW TRIAL BASED ON JUROR MISCONDUCT?

In *State v. Jenkins*, 269 Kan. 334, 2 P.3d 769 (2000), the court addressed a similar question as to the standard of review where a defendant seeks a new trial claiming that defendant's Sixth Amendment right to trial by an impartial jury had been violated by juror misconduct. The *Jenkins* court noted:

"An appellate court's review of an order denying a motion for a new trial or a motion to recall a jury is limited to whether the trial court abused its discretion. If a defendant's constitutional right has been violated during a trial, a judge's discretion to deny a motion for a new trial or a motion to recall a jury is limited.

At this point, there is a greater reason for the judge to articulate the reasons for his or her 'discretionary' decision. A trial court abuses its discretion when it denies a motion for a new trial based on juror misconduct if the defendant can show that (1) an act of the jury constituted misconduct and (2) the misconduct substantially prejudiced the defendant's right to a fair trial. *State v. Garza,* 26 Kan. App. 2d 426, Syl. ¶ ¶ 1, 2, 4, 991 P.2d 905 (1999)." 269 Kan. at 338.

In *Jenkins,* the court found that the trial court abused its discretion in denying defendant's motion for a new trial. The focus of the inquiry was a juror known as M.M.A. In an affidavit defendant was permitted by the trial court to obtain, M.M.A. stated that three people she innocently denied knowing in voir dire were people she was familiar with. The three individuals were the victim and two State's witnesses. 269 Kan. at 335-36. In addition, M.M.A. revealed that she intentionally misled the attorneys in voir dire:

"M.M.A. also stated that, contrary to her representations to the attorneys, her only son had been murdered in Wyandotte County, Kansas, in 1993. During the investigation and prosecution of her son's murder, M.M.A. had numerous contacts with detectives William K. Smith and Michael Shomin. She found the detectives to be extremely helpful in making sure that her son's murderer was successfully prosecuted. M.M.A. did not disclose her prior contact with the officers during voir dire of the jury panel, and both officers were witnesses in Jenkins' trial.

"Finally, M.M.A. also admitted that she was familiar with the area where the victim's body had been found and was aware that area was known for drug activities." 269 Kan. at 336.

The intentionally deceptive nature of M.M.A.'s misconduct was the centerpiece of the court's discussion. 269 Kan. at 336, 339. The court's conclusion that M.M.A.'s misconduct substantially prejudiced Jenkins' right to a fair trial was also based on concealment of the juror's highly positive experience with police and prosecution when her own son was the victim of violent crime.

Here, defendant first complains that during voir dire juror M.W.M. failed to respond affirmatively when the panel was asked if anyone recognized Mathis. M.W.M. is defendant's half-brother's father's brother. Mathis and his half-brother have the same mother, hence Mathis is unrelated to M.W.M. In addition, Mathis did not recognize M.W.M. and offered no reason why M.W.M. would have recognized Mathis. Mathis argues that M.W.M. should have recognized his half-brother who was in the courtroom "during much

of the giving of the evidence." We note that there is no suggestion that the half-brother was present during voir dire or that the relationship of the half-brother to Mathis would have been apparent to those in the courtroom and there is no reason to believe that the half-brother's later presence caused M.W.M. to become aware of the connection.

Mathis claimed in his pro se motion for a new trial that another juror, B.S.R., had previously been married to M.W.M.'s brother. That juror failed to respond affirmatively when asked if the jurors knew any of the other venirepersons. We note that the trial court had inquired and found that Mathis had no acquaintance or relationship with B.S.R.

In denying the defendant's motion for new trial for juror misconduct, the trial court noted that there were no relationships by blood or by marriage as prohibited by statute. The trial court further stated that it was reasonable to infer from Mathis' not knowing M.W.M. and B.S.R., that they did not know him. The trial court dismissed the defendant's notion that any previous family relationship between M.W.M. and B.S.R. would affect their deliberations on the charges against a defendant unknown to them. In effect, the trial court found no misconduct in M.W.M.'s failing to say he knew Mathis and found no possibility of prejudice in the two jurors failing to say they knew each other.

A trial court abuses its discretion when it denies a motion for a new trial based on juror misconduct if the defendant can show that (1) an act of the jury constituted misconduct and (2) the misconduct substantially prejudiced the defendant's right to a fair trial. Here the trial court had determined there was no misconduct in M.W.M.'s failing to say he knew Mathis and no prejudice has been shown, or even suggested, from the two jurors failing to say they knew each other. We find that there was no abuse of discretion in denying Mathis' motion for a new trial.

## 2. SUFFICIENCY OF THE EVIDENCE

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution,

the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Beach*, 275 Kan. 603, Syl. ¶ 2, 67 P.3d 121 (2003). A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Davis*, 275 Kan. 107, 118, 61 P.3d 701 (2003).

Mathis contends that the only evidence supporting his conviction of felony murder was that he was alone with C.S. for most of the day on December 1, 2000. We note that the lack of opportunity for anyone else to have injured C.S., coupled with the medical evidence that the severe internal injuries could not have been the result of a fall, constitutes evidence from which a rational factfinder could find defendant guilty beyond a reasonable doubt.

Mathis also contends that there is medical evidence from which the jury could reasonably have inferred that C.S.'s injuries were inflicted by Ikesia before she left for work. This argument is based on Dr. Klem's testimony that the injuries could have been inflicted up to 12 hours before C.S. was admitted to the emergency room at 5:32 p.m. Dr. Klem testified it would take approximately 2 hours after the injuries were inflicted for C.S. to go into shock and that the results of laboratory tests suggested that C.S. had been in shock 4 to 6 hours by the time he was taken to the emergency room. Dr. Klem noted that individual responses to trauma vary. He estimated that the longest period that theoretically could have elapsed between C.S.'s being injured and his arrival in the emergency room was "less than eight to twelve hours."

Dr. Klem's opinion, based on C.S.'s laboratory results, was that 6 to 8 hours elapsed between when the injuries were inflicted and when C.S. was admitted to the emergency room. Ikesia left for work at approximately 8 a.m., which was 9½ hours before C.S. was admitted to the emergency room. We are convinced that a rational factfinder could have found defendant guilty beyond a reasonable doubt.

## 3. THE ADMISSION OF CERTAIN EVIDENCE

The admission of evidence lies within the sound discretion of the trial court. An appellate court's standard of review of a trial court's admission of evidence, subject to exclusionary rules, is

abuse of discretion. *State v. Jenkins*, 272 Kan. 1366, 1378, 39 P.3d 47 (2002).

Mathis complains that the trial court improperly admitted a letter he wrote to Ikesia, certain testimony of Ikesia and her mother, Diane Scruggs, C.S.'s medical history, and defendant's prior crimes and wrongdoings. We note that there were no objections to this evidence at trial. A timely objection to the admission of evidence at trial must be made in order to preserve that issue for appeal. K.S.A. 60-404; *State v. Diggs*, 272 Kan. 349, 365, 34 P.3d 63 (2001). The importance of the contemporaneous objection rule is that it gives the trial court the opportunity to conduct the trial without the use of tainted evidence. However, since this appeal includes a claim of ineffective counsel, based in part on trial counsel's failure to object to the evidence, we will review defendant's claims of error.

After defense counsel stated that there was no objection to admission of defendant's July 31, 2001, letter to Ikesia, the letter was read to the jury. Defendant now argues that the letter was inadmissible hearsay. We note that the letter was a statement by a defendant who is a party to this action and, therefore, is not hearsay. K.S.A. 60-460(g) provides that evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except, as against a party, a statement by the person who is the party to the action.

Defendant asserts that the testimony of Ikesia and Diane Scruggs was improperly admitted into evidence. Ikesia testified that her father, after seeing bruises on C.S. on an earlier occasion, told her to call the police because, "if [she] didn't, either Coy was gonna end up hurting me or my son." Diane Scruggs testified that Ikesia's father told her to leave the defendant because, if she did not, Mathis "was either gonna kill her or that baby." Ikesia's father did not testify. The father's statements were not hearsay because the statements were not offered to show that defendant would hurt Ikesia or C.S., but rather to show Ikesia's father's belief that defendant posed a danger to Ikesia and C.S.

Diane also testified that she did not doubt that Ikesia continued in a relationship with defendant after he was charged in the death of C.S. because "[h]e basically had her so fearful, she probably would." There was no objection by defense counsel. Defendant now argues that there was no basis for this opinion. The State counters that the basis for her opinion was that defendant had abused C.S. and that the abuse was a principal subject of Diane's testimony.

The prosecuting attorney asked Ikesia whether defendant "talk[s] at all about what he has done in that letter?" The witness then asked whether the prosecutor meant what had been done to C.S. The prosecutor replied, "yes," and the witness answered, "no." On appeal, Mathis complains that the question was improper because it went "to the ultimate issue of guilt." There was no objection to the question and the witness said, "no."

Diane testified that, when she saw C.S. covered with bruises in the emergency room, "I automatically ran out and I ran and held my brother and said that that—I said that that goddamned [Mathis] done killed the baby." Mathis complains that her conclusion was pure conjecture and invaded the province of the jury. As the State points out, Diane's testimony was her excited response to seeing the injured C.S. rather than about her opinion at the time of trial of the defendant's guilt. In addition, there was no contemporaneous objection to admission of that statement.

Mathis also argues that Diane's testimony was comparable to a law enforcement officer's vouching for the veracity of a victim's statement in *State v. Plaskett*, 271 Kan. 995, 1007-09, 27 P.3d 890 (2001). Mathis is mistaken in believing that there is any comparison between the two issues. In *Plaskett*, the witness served as a human lie detector by expressing an opinion on the credibility of another witness. Diane immediately stated her belief that Mathis abused C.S.

### C.S.'s Medical History

The State presented evidence of C.S.'s seven visits to a doctor between February 1999 and late November 2000. Mathis has complaints that admission of the evidence was (1) irrelevant because

that evidence did not link him with abuse of C.S. and (2) that evidence was unduly prejudicial. The evidence, as stated by defendant, does not link him with abuse and is not prejudicial. The State notes that the evidence was relevant and tended to disprove that C.S. had not been injured while in his mother's custody. The defense attempted to show that Ikesia fatally injured C.S. The State also argues that evidence of an October visit was related to the October abuse of a child charge against defendant and that a late November visit isolated the time of the fatal abuse.

### Defendant's Prior Crimes and Wrongdoings

Ikesia testified that after defendant had been out of jail a couple of months, C.S., to avoid being around defendant, would stay in his room. She testified that when she got home after work on the day C.S. was fatally beaten, defendant asked her to go out and get him some marijuana.

The State notes that both statements made by the witness were unsolicited responses to proper questions. This court has recognized " 'it is impossible for the court in advance to exclude an improper answer to a proper question.' " *State v. Mims*, 222 Kan. 335, 337, 564 P.2d 531 (1977) (quoting *State v. Mitchell*, 220 Kan. 700, 703, 556 P.2d 874 [1976]). The State did not seek to introduce the evidence or solicit the responses. Further, there was no indication of why the defendant was in jail, and Ikesia committed the crime of purchasing the marijuana. We do not find the trial court abused its discretion in admitting evidence in this case.

### 4. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Prior to determining that a defense counsel's assistance was so defective as to require reversal of a conviction, the defendant must establish two things. First, the defendant must establish that counsel's performance was deficient. This requires a defendant to show that counsel made errors so serious, that counsel's performance was less than that guaranteed to a defendant by the Sixth Amendment to the United States Constitution. Second, the defendant must also establish that the deficient performance prejudiced the defense. The defendant is required to show that his counsel's errors

were so serious as to deprive the defendant of a fair trial. The performance and prejudice prongs of the ineffective assistance of counsel inquiry are each mixed questions of law and fact, and appeal requires de novo review. *State v. Griffin,* 279 Kan. 634, 643, 112 P.3d 862 (2005).

We have previously stated that

"[j]udicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. [Citation omitted.] To show prejudice, the defendant must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. [Citation omitted.]" *State v. Betts,* 272 Kan. 369, 387-88, 33 P.3d 575 (2001).

Here, upon remand of the issue of ineffective assistance of counsel, the trial judge conducted an evidentiary hearing at which three witnesses—trial counsel, the defendant, and an expert on child abuse trials—testified, then heard arguments of counsel, took the matter under advisement, and later announced his ruling from the bench. Mathis contended that he did not receive effective assistance of trial counsel because defense counsel failed to: (1) strike a part-time reserve sheriff's deputy from the jury; (2) object to the introduction into evidence of a letter written by defendant to Ikesia; (3) object to the testimony of Ikesia and Diane Scruggs; (4) object to testimony that Ikesia purchased marijuana for defendant; (5) object to evidence of C.S.'s prior good health; and (6) hire an expert on child abuse.

Matthew O'Connor testified for defendant as an expert witness on child abuse trials. The trial judge stated that, after carefully considering the evidence and arguments and reviewing his trial notes, the trial counsel's performance was not deficient. After finding there was not deficient performance by defense counsel, the trial judge noted it was unnecessary to consider the question of prejudice.

We note that in his ruling, the trial judge specifically addressed each of defendant's allegations of deficient performance. We have

reviewed each of the trial judge's findings. We conclude the trial judge did not err in finding counsel was not deficient.

5. WAS DEFENDANT DENIED A FAIR TRIAL BY CU-MULATIVE ERRORS?

We have recognized that the collective effect of trial errors may in exceptional instances weigh so heavily as to require reversal. The test is whether the totality of circumstances substantially preju-diced the defendant and denied the defendant a fair trial. *State v. Humphrey*, 267 Kan. 45, Syl. ¶ 10, 978 P.2d 264 (1999). The errors alleged by Mathis have little or no merit, and he has not shown substantial prejudice from them. Even if he had, Mathis failed to preserve them for appeal.

The State's appeal on a question reserved is dismissed. The con-viction on the cross-appeal is affirmed.