(171 P.3d 646)

No. 96,601

VINCENT SCOTT, *Appellant,* v. ROGER WERHOLTZ,
Secretary of Corrections, and STATE of KANSAS, *Appellees.*

Opinion filed November 21, 2007.

*Michael J. Bartee,* of Michael J. Bartee, P.A., of Olathe, for appellant.

*Steven J. Obermeier,* assistant district attorney, *Phill Kline,* district attorney, and *Paul J. Morrison,* attorney general, for appellee.

Before HILL, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: Vincent Scott appeals from the trial court's summary denial of his K.S.A. 60-1507 motion. First, Scott argues that the trial court should have appointed counsel and held a hearing to determine the factual validity of his assertion that his trial counsel was ineffective for allowing him to proceed to a bench trial on

stipulated facts. Nevertheless, the record in this case shows that Scott was fully aware that he was waiving his right to a jury trial and was agreeing to a bench trial on the stipulated facts. Scott's attorney was not deficient in allowing Scott to proceed to a bench trial on stipulated facts when Scott agreed to that course of action and fully understood the consequences of his actions. Therefore, Scott cannot prevail on this issue.

Next, Scott argues that his trial counsel was ineffective for failing to raise the argument that his rights under the Fourth Amendment to the United States Constitution were violated when his DNA evidence lawfully obtained during an investigation of a burglary case was compared with DNA evidence in other unsolved cases. Nevertheless, once law enforcement lawfully obtained Scott's blood sample and DNA evidence, no privacy interest persisted in this evidence. Scott's DNA profile could be used in the investigation of other crimes for identification purposes. Because Scott's argument lacks merit, Scott is unable to meet the test for ineffective assistance of counsel.

Finally, Scott contends that the trial court lacked jurisdiction in his underlying criminal case because no complaint or information was filed after the preliminary hearing, in violation of K.S.A. 22-2905. Nevertheless, where the charges against Scott remained the same as those contained in the original complaint, the State was not required to file an additional complaint or an information under K.S.A. 22-2905. Based on the facts of this case, the trial court had jurisdiction to convict Scott of the charged offenses. Accordingly, we affirm.

While investigating a burglary of a gun shop that occurred in August 1997, law enforcement officers served a search warrant on Scott in January 1998. The search warrant authorized the officers to obtain blood, saliva, and hair samples from Scott. A DNA analysis revealed that the blood collected from Scott matched the blood found at the gun shop. A forensic chemist with the Johnson County crime lab also compared the DNA profile from Scott's blood sample with the DNA profiles from other biological samples recovered in unsolved crimes. Scott's DNA profile matched the DNA profile from semen stains recovered in an unsolved 1996 case, in which a

21-year-old female was raped and sodomized. After the DNA connection was discovered, Scott's fingerprints were compared to a latent fingerprint recovered in the 1996 rape case. A latent print examiner with the Johnson County Sheriff's Department determined that Scott's fingerprint matched the latent fingerprint recovered in the rape case. See *State v. Scott*, No. 88,129, unpublished opinion filed May 2, 2003, slip op. at 7-8.

The State charged Scott with burglary, felony theft, and criminal damage to property in the gun shop case—case No. 98CR1568. In addition, Scott was charged with rape and aggravated criminal sodomy in the 1996 case—case No. 98CR2782. Scott moved to suppress the evidence in both cases. The trial court denied Scott's motions to suppress.

Based on a plea agreement, Scott pled no contest to burglary, rape, and aggravated criminal sodomy counts with the understanding that he would preserve his right to appeal the denial of his motions to suppress. The trial court found Scott guilty of the three counts. Scott appealed his convictions to this court. This court consolidated Scott's two criminal cases. This court remanded the case for a determination of whether Scott's counsel was ineffective in advising Scott to plead no contest so he could preserve his suppression issues for appeal. On remand, the trial court set aside Scott's no contest pleas. Scott filed two new motions to suppress, but the trial court again denied his motions.

Scott agreed to submit the charges of rape, aggravated criminal sodomy, and burglary to the trial court for a bench trial on stipulated facts. The State agreed to dismiss the charges of felony theft and criminal damage to property. At the conclusion of the bench trial, the trial court convicted Scott of the three charges. Scott appealed to this court, challenging the denial of his motions to suppress. This court affirmed Scott's convictions in *State v. Scott*, No. 88,129, unpublished opinion filed May 2, 2003.

In July 2004, Scott moved for relief under K.S.A. 60-1507 in case No. 04CV05344. Scott argued that his trial counsel was ineffective by allowing him to be convicted based upon stipulated facts when he did not agree to the stipulated facts nor did he fully understand the contents of the agreement. In addition, Scott argued

that his trial and appellate counsel were ineffective for failing to challenge the collection of his DNA and the comparison of it with DNA samples in the 1996 rape case.

In August 2004, Scott filed two supplemental K.S.A. 60-1507 motions, setting forth the same two issues raised in 04CV05344. These later motions were each assigned a separate case number. The trial court determined that all of the claims asserted by Scott pertained to 04CV05344. In September 2004, Scott filed a second amended petition in 04CV05344. Scott argued that the trial court lacked jurisdiction to convict him in his underlying criminal case because the prosecutor never filed an information formally charging him with the crime for which he had been bound over for trial. Determining that all of the issues raised by Scott lacked merit, the trial court summarily denied relief under K.S.A. 60-1507.

*Standard of Review*

On appeal, Scott argues that the trial court erred in summarily denying his K.S.A. 60-1507 motion and denying his request for appointment of counsel. The trial court shall hold an evidentiary hearing on a K.S.A. 60-1507 motion and make findings of fact and conclusions of law with respect thereto, unless the motion and the files and records of the case conclusively show the prisoner is not entitled to relief. K.S.A. 60-1507(b); Supreme Court Rule 183(f) and (j) (2006 Kan. Ct. R. Annot. 227). The burden is on the movant to allege facts sufficient to warrant a hearing on the 60-1507 motion. Supreme Court Rule 183(g); *Woodberry v. State*, 33 Kan. App. 2d 171, 173, 101 P.3d 727, *rev. denied* 278 Kan. 853 (2004).

The standard of review when a trial court fails to appoint counsel and summarily denies a K.S.A. 60-1507 motion is abuse of discretion. The trial court has discretion to determine whether the claim is substantial before granting an evidentiary hearing and ordering the prisoner's presence at the hearing. *Laymon v. State*, 280 Kan. 430, 436-37, 122 P.3d 326 (2005); Supreme Court Rule 183(h).

*Ineffective Assistance of Trial Counsel*

First, Scott argues that the trial court should have appointed counsel and held a hearing to determine the factual validity of his

assertion that his trial counsel was ineffective for allowing him to proceed to a bench trial on stipulated facts. Scott maintains that he did not agree to the stipulated facts before the trial court, nor did he fully understand the contents of the agreement.

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law requiring de novo review. *State v. Mathis*, 281 Kan. 99, 110, 130 P.3d 14 (2006). Before counsel's assistance is determined to be so defective as to require reversal of a conviction, the defendant is required to establish two things. First, the defendant must establish that counsel's performance was deficient, which requires a showing that counsel made errors so serious that his or her performance was less than that guaranteed to the defendant. Second, the defendant must establish that counsel's deficient performance prejudiced the defense, which requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial. *Mathis*, 281 Kan. at 109-10.

The State maintains that the transcript from the bench trial conclusively establishes that Scott is not entitled to relief on this issue. At the bench trial, the trial court ensured that Scott understood he was waiving his right to a jury trial and was proceeding to a bench trial on stipulated facts based on the disposition agreement. Specifically, the following discussion took place between the trial judge and Scott at trial:

"[Trial judge:] As part of the Disposition Agreement which has been presented in writing to the Court, you would, first of all, waive your right to a jury trial of both of these cases. You do have a right to have both of these cases heard by a jury of your peers at trial, and by submitting the case to the Court on the Stipulated Offer of Proof, then I will make the determination of your guilt based upon that Offer of Proof. Do you understand that?
"[Scott:] Yes, sir.
"[Trial judge:] You are waiving your right to a jury trial in both cases?
"[Scott:] Yes.
. . . .
"[Trial judge:] Do you have any other statements you wish to make?
"[Scott:] No."

Defense counsel then made clear that he had discussed this course of action with Scott several times. Defense counsel questioned Scott about why he chose this course of action:

"[Defense counsel:] And the purpose here is to present the appeal and the motions, and you still want the benefit of the bargain, and I've explained and given you my advice on how best to accomplish that?

"[Scott:] What I understand is that this is the best route for me at this time, okay. Based on the stipulated facts without going to jury and to preserve my rights in appellate court, and my whole purpose of taking this is to still reserve my rights without giving myself more time, okay. And this is what I understand. This is what we have talked about."

The trial court later questioned Scott about whether he had an opportunity to thoroughly review the stipulated offer of proof. Scott responded, "I had an opportunity to briefly go over that at this time." Scott's attorney informed the trial court that the stipulated offer of proof was the same offer that had been made previously with only a few changes. Indeed, the record in this case reveals that the stipulated offer of proof submitted at the bench trial was nearly identical, save for a few minor changes, to the stipulated offer of proof submitted to the trial court when Scott pled no contest to the charges. Scott's attorney stated that he had gone over the changes with Scott and that Scott had a copy of the stipulated offer of proof. Indeed, Scott acknowledged to the trial court that he had gone over the stipulated offer of proof with his attorney.

In denying Scott relief on his K.S.A. 60-1507 motion, the trial court rejected Scott's argument that his trial counsel was ineffective for allowing him to be convicted on stipulated facts at a bench trial. Determining that the record established that Scott understood and wished to proceed to a bench trial on stipulated facts, the trial court stated:

"A review of the record reveals that great efforts were made by counsel and the court to ensure that petitioner was aware and understood the implications of his decision to proceed on stipulated facts and waive a jury trial. The record is clear. The petitioner responded that he had spoken with his counsel on more than one occasion about the matter. Further, that he understood 'that this was the best route for me at this time' and his whole purpose was to preserve his rights. He indicated that he understood and wished to proceed with a bench trial under stipulated facts according to the disposition agreement."

The trial court's analysis of the record is correct. The record establishes that Scott fully understood that he was waiving his right

to a jury trial by entering into the disposition agreement. Scott had gone over the stipulated facts with his attorney and had agreed to proceed to a bench trial on those facts. Scott's attorney cannot be deficient for allowing Scott to proceed to a bench trial on stipulated facts when Scott agreed to that course of action and fully understood the consequences of his actions. The record in this case conclusively establishes that Scott is not entitled to relief under K.S.A. 60-1507 on this issue.

### Ineffective Assistance of Appellate Counsel

Next, Scott contends that his counsel representing him on direct appeal was ineffective for failing to raise an issue on direct appeal that had been raised in one of his motions to suppress. In his motion to suppress filed in 98CR2782, Scott had argued that the comparison of his blood samples with the DNA evidence in the unsolved 1996 case was an unlawful search of his blood. Scott maintains that his appellate counsel's failure to raise this issue on direct appeal fell below an objective standard of reasonableness and prejudiced his defense.

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law requiring de novo review. *Mathis*, 281 Kan. at 110. In order to establish ineffective assistance on appeal, a defendant must show the following two things:

" '(1) counsel's performance, based upon the totality of the circumstances, was deficient in that it fell below an objective standard of reasonableness, and (2) [defendant] was prejudiced to the extent that there is a reasonable probability that, but for counsel's deficient performance, the appeal would have been successful.' [Citations omitted.]" *State v. Smith*, 278 Kan. 45, 51-52, 92 P.3d 1096 (2004).

### Deficient Performance

In his appellate brief on this issue, Scott repeatedly states that the issue raised in his motion to suppress appears to be a novel one in Kansas. The State, however, points out that cases from other jurisdictions have held that appellate counsel's failure to advance novel legal theories or arguments does not constitute ineffective performance.

The State cites *Ledbetter v. Commissioner of Correction*, 275 Conn. 451, 460-61, 880 A.2d 160 (2005), *cert. denied* 546 U.S. 1087 (2006), where the Connecticut Supreme Court recognized that "numerous state and federal courts have concluded that counsel's failure to advance novel legal theories or arguments does not constitute ineffective performance." See *Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005), *cert. denied* 546 U.S. 882 (2005) (counsel's failure to raise novel argument does not render performance constitutionally ineffective); *Box v. Petsock*, 697 F. Supp. 821, 835 (M.D. Pa. 1987), *aff'd mem.* 860 F.2d 1074 (3d Cir. 1988), *cert. denied* 489 U.S. 1028 (1989) (counsel not required to pursue novel theories of defense); *Weaver v. State*, 339 Ark. 97, 102, 3 S.W.3d 323 (1999) ("An attorney is not ineffective for failing to raise every novel issue which might conceivably be raised."); *Haight v. Com*, 41 S.W.3d 436, 448, (Ky.) *cert. denied* 534 U.S. 998 (2001) ("[W]hile the failure to advance an established legal theory may result in ineffective assistance of counsel under *Strickland*, the failure to advance a novel theory never will."); *People v. Reed*, 453 Mich. 685, 695, 556 N.W.2d 858 (1996) ("[C]ounsel's performance cannot be deemed deficient for failing to advance a novel legal argument."); *Com. v. Jones*, 571 Pa. 112, 131, 811 A.2d 994 (2002) ("Counsel cannot be faulted for failing to advance a novel legal theory which has never been accepted by the pertinent courts.").

Similar to the statements made in cases from other jurisdictions, this court in *Tomlin v. State*, 35 Kan. App. 2d 398, 404, 130 P.3d 1229, *rev. denied* 282 Kan. 796 (2006), stated that the failure of counsel to advance new theories does not render a lawyer's performance constitutionally deficient. Moreover, in *Laymon v. State*, 280 Kan. 430, 439, 122 P.3d 326 (2005), our Supreme Court recognized that the failure of counsel to raise a particular issue on appeal is not, per se, to be equated with ineffective assistance of counsel. Our Supreme Court did note, however, that counsel's "failure to foresee a change in the law may lead to K.S.A. 60-1507 relief if the failure was not objectively reasonable. [Citations omitted.]" 280 Kan. at 439-40. Nevertheless, citing *Baker v. State*, 243 Kan. 1, 10, 755 P.2d 493 (1988), our Supreme Court recognized

that counsel should only include issues on appeal that, in the exercise of professional judgment, have merit:

" 'In an appeal from a criminal conviction, appellate counsel should carefully consider the issues, and those that are weak or without merit, as well as those which could result in nothing more than harmless error, should not be included as issues on appeal. Likewise, the fact that the defendant requests such an issue or issues to be raised does not require appellate counsel to include them. Conscientious counsel should only raise issues on appeal which, in the exercise of reasonable professional judgment, have merit.' " 280 Kan. at 440.

In this case, Scott acknowledges that the issue he alleges should have been raised by his attorney on direct appeal was a new legal theory. A review of Kansas case law reveals no other cases files around the time of Scott's direct appeal where a similar issue was raised. Moreover, as discussed below, this new legal theory lacks merit. As pointed out in *Baker*, "[c]onscientious counsel should only raise issues on appeal which, in the exercise of professional judgment, have merit." 243 Kan. at 10. As a result, Scott's attorney was not deficient in failing to raise this issue in Scott's direct appeal.

*Prejudice*

The issue raised by Scott in his motion to suppress can be summarized as follows: whether an individual's rights under the Fourth Amendment to the United States Constitution are violated when the individual's DNA evidence seized under a valid search warrant in the investigation of one crime is compared to DNA evidence recovered from other unsolved crimes.

This issue has not yet been addressed by our Supreme Court. Nevertheless, other jurisdictions have held that an individual has no further privacy interest in DNA evidence that has been lawfully obtained from that individual. In discussing a situation where a blood sample had been obtained for DNA analysis, 3 LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 5.3(c), p. 176, n.130 (4th ed. 2004), stated:

"Such information about the defendant may already be available, however, obviating the need to obtain a new blood sample for this purpose. The blood sample may have been lawfully obtained in investigating another crime on an earlier occasion, as in *State v. Hauge*, 103 Haw. 38, 79 P.3d 131 (2003), or may have been obtained incident to a prior conviction of the defendant pursuant to a statute

of the kind discussed in § 5.4(c). The defendant cannot object to use of that information in the instant case, for, as held in *Hauge*, 'once a blood sample and DNA profile is lawfully procured from a defendant, no privacy interest persists in either the sample or the profile.' Accord: *People v. Baylor*, 97 Cal. App. 4th 504, 118 Cal. Rptr. 2d 518 (2002); *Washington v. State*, 653 So. 2d 362 (Fla. 1994); *Bickley v. State*, 227 Ga. App. 413, 489 S.E.2d 167 (1997); *Smith v. State*, 744 N.E.2d 437 (Ind. 2001); *Wilson v. State*, 132 Md. App. 510, 752 A.2d 1250 (2000); *People v. King*, 232 A.D.2d 111, 663 N.Y.S.2d 610 (App. Div. 1997); *State v. Barkley*, 144 N.C. App. 514, 551 S.E.2d 131 (2001)."

*State v. Hauge*, 103 Hawaii 38, 79 P.3d 131 (2003), contained a situation similar to that in the instant case. In *Hauge*, the defendant's blood was lawfully obtained by a search warrant during a robbery investigation. Law enforcement requested that a lab analyze and compare the defendant's DNA to DNA recovered in a separate burglary investigation. The defendant's DNA matched the DNA in the burglary investigation, and the defendant was arrested in connection with the burglary. The trial court denied the defendant's motion to suppress the evidence.

On appeal, the Hawaii Supreme Court rejected the defendant's argument that a suspect retained an expectation of privacy in his DNA profile obtained by a valid search warrant. The court looked to the rulings in other jurisdictions that once a blood sample and DNA profile is lawfully obtained from a defendant, no privacy interest persists in either the blood sample or the DNA profile. The court cited as authority all of the cases referenced in LaFave above. The court discussed several of those cases and ultimately adopted the reasoning in *Bickley v. State*, 227 Ga. App. 413, 489 S.E.2d 167 (1997), holding that "regardless of the number of times that the HPD tested Hauge's blood sample for its DNA, no violation of his constitutional right to privacy occurred because the analyses did not exceed the objective for which the original warrant was sought—DNA testing for the purpose of identification." 103 Hawaii at 52.

Applying the reasoning from *Hauge* and the other states' decisions cited therein to the facts of this case, we conclude that no privacy interest persisted in Scott's blood sample and DNA profile once law enforcement lawfully obtained that evidence through a valid search warrant. The evidence could be used in the investi-

gation of other crimes for identification purposes. Therefore, the issue raised by Scott in his motion to suppress has no merit. Accordingly, Scott was not prejudiced by his counsel's failure to raise the argument on direct appeal.

*Jurisdiction*

Finally, Scott argues that the trial court lacked jurisdiction in his underlying criminal case because no complaint or information was filed after the preliminary hearing in violation of K.S.A. 22-2905. Whether jurisdiction exists is a question of law over which an appellate court's scope of review is unlimited. *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 369, 130 P.3d 560 (2006); *State v. Jackson*, 280 Kan. 16, 30, 118 P.3d 1238 (2005).

Scott's argument requires interpretation of K.S.A. 22-2905. The interpretation of a statute presents a question of law over which an appellate court has unlimited review. An appellate court is not bound by the trial court's interpretation of a statute. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

K.S.A. 22-2905(1) states:

"When a defendant is bound over to a district judge for trial, the prosecuting attorney shall file an information in the office of the clerk of the district court, charging the crime for which the defendant was bound over. If the complaint is in proper form, pursuant to K.S.A. 22-3201 and amendments thereto, it may be used as the information."

Essentially, Scott argues that based on the use of the word "shall" in the first sentence of K.S.A. 22-2905(1), the State was required to refile the complaint or file an information after he was bound over at preliminary hearing. Nevertheless, Scott's argument isolates the first sentence of K.S.A. 22-2905(1), instead of considering the entire statutory provision. Nevertheless, we are not permitted under the rules of statutory construction to treat any part of a statute as superfluous. *Driscoll v. Hershberger*, 172 Kan. 145, 155, 238 P.2d 493 (1951); *Goff v. Aetna Life & Casualty Company, Inc.*, 1 Kan. App. 2d 171, 175, 563 P.2d 1073 (1977). Instead, our responsibility is to give effect to all portions of a statute and reconcile different provisions in a manner that makes them consistent,

harmonious, and sensible. *State v. Rush*, 255 Kan. 672, 677, 877 P.2d 386 (1994).

The first sentence of K.S.A. 22-2905(1) states that when a defendant is bound over for trial, the prosecutor "shall file an information" with the clerk of the district court, "charging the crime for which the defendant was bound over." Nevertheless, K.S.A. 22-2905(1) further states that the complaint, if in proper form under K.S.A. 22-3201, may be used as the information. Nothing in K.S.A. 22-2905 requires the prosecutor to refile the complaint after the defendant is bound over for trial. Under K.S.A. 2006 Supp. 22-2902(6), the complaint or information, as filed by the prosecutor under K.S.A. 22-2905, "shall serve as the formal charging document at trial."

The second sentence of K.S.A. 22-2905(1) allows the prosecutor to proceed to trial on a complaint that is in proper form under K.S.A. 22-3201. When construing the first and second sentences of K.S.A. 22-2905(1) together, the statute does not require the prosecutor to file an information when the complaint is in proper form and sets forth the charges for which the defendant is bound over. In *Curless v. Board of County Commissioners*, 197 Kan. 580, 586, 419 P.2d 876 (1966), our Supreme Court recognized that the use of the word "shall" in a statute does not prevent the statute from being construed as requiring a discretionary act. We reject the defendant's argument that the use of the word "shall" in the first sentence of K.S.A. 22-2905(1) requires the prosecutor to file an information or a second complaint after a defendant is bound over for trial.

Giving effect to both sentences of K.S.A. 22-2905(1), we determine that a prosecutor is not required to file a second complaint or an information after the defendant is bound over for trial when the prosecutor is not amending the original charges.

In this case, the State filed complaints in both 98CR1568 and 98CR2782 when it commenced the cases against Scott. Scott fails to argue that the complaints were not in proper form under K.S.A. 2006 Supp. 22-3201(b), the statute detailing the requirements for a valid complaint, information, or indictment. The complaints properly informed Scott of the charges against him in the two cases.

When Scott was bound over for trial, the State did not amend the original charges against Scott. The original complaints served as the formal charging document in the case. We find no error in the State's failure to file an additional document, either an information or a second complaint, after Scott was bound over for trial. Under these circumstances, the trial court had jurisdiction to convict Scott of the charged offenses.

Affirmed.