No. 98,226

STATE OF KANSAS, *Appellee*, v. JAY D. DECKER, *Appellant*.
(202 P.3d 669)

Opinion filed March 13, 2009.

*Kari Nelson*, of Law Office of Kari Nelson, of Lawrence, argued the cause and was on the brief for appellant.

*Mark A. Simpson*, assistant district attorney, argued the cause, and *Brenda J. Clary*, assistant district attorney, *Charles E. Branson*, district attorney, and *Stephen N. Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Jay D. Decker appeals his jury trial conviction for felony murder. He claims the trial court erred by: Admitting autopsy and postmortem photographs; allowing testimony of a prior crime or civil wrong; limiting his redirect examination of a witness; and failing to give his requested cautionary jury instruction on accomplice testimony. Further, Decker complains that the prosecutor's misstatement of law in closing argument denied him a fair trial, as did the cumulative effect of all of the trial errors. Finding that Decker received a fair trial, we affirm his conviction.

The criminal charges against Decker arose from the October 14, 2005, death of his daughter, Risha Jetta Lafferty, who was approximately 6 months old. At the time, Decker was living with the infant's mother, Brandi Hendrickson, although she was at her workplace when Decker called 911 to report that the infant was not breathing. The first officer on the scene initiated CPR but was unable to revive the infant. The officer observed that the child had several bruises on her body—three on her forehead, one on her temple, others on the jawline, and one above the breastbone. The officer also noticed a "bubbling sound" coming from Risha's lung area.

Decker initially related that, about an hour earlier, he had been asleep in the bedroom when Risha started to cry. Decker reported that he then picked up the infant, placed her on his stomach, rolled onto his back, and the momentum carried Risha off his stomach onto the floor, where she struck her head. Decker said he picked up the child to console her, but that she continued to cry for another 20 minutes and then stopped breathing. He then attempted CPR and left to call 911 from a pay phone.

When other officers subsequently asked Decker what happened, he reported that he gave Risha a bath to comfort her after she fell from his stomach, prior to calling for help. He said that after the bath, he heard an "asthma coughing-type wheeze," following which the child stopped breathing. During this exchange, Decker volunteered that the child's injuries may have been sustained during an incident 2 or 3 days prior. That incident was described as the

child rolling off Decker's chest while they were lying on the couch, and Decker grabbing for the child and catching her by the neck.

The police transported Decker to the Law Enforcement Center. The police also contacted Hendrickson at her workplace, notified her of Risha's death, and transported Hendrickson to the Law Enforcement Center. Hendrickson was charged with child endangerment but eventually pled to a misdemeanor in exchange for her testimony against Decker. The State charged Decker with felony murder on the theory that the death occurred during his commission of the crime of physically abusing the infant. A first trial was declared a mistrial without the parties' objection, because of an evidentiary concern. At the subsequent trial, the jury convicted Decker of felony murder.

## ADMISSION OF PHOTOGRAPHS

Decker makes a general argument that the district court abused its discretion in allowing postmortem and autopsy photographs to be admitted into evidence after the cause of death had already been determined. See *State v. Sappington*, 285 Kan. 176, 194, 169 P.3d 1107 (2007) (standard of review of relevance or prejudicial effect of photographs is abuse of discretion). He does not specify the particular exhibits that he claims were erroneously admitted, apparently intending to challenge all the postmortem photographs.

To preserve his challenge to the trial court's admission of photographs, Decker was required to make an "objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." K.S.A. 60-404. At a pretrial hearing, the defense only challenged the preautopsy photographs of the deceased child, asserting that a number of the photographs were merely cumulative. The defense requested that the trial court limit them to "just a couple." Decker did not argue for the exclusion of the autopsy photographs, indicating that the defense would also make use of those exhibits.

However, at trial, the defense apparently changed its position and only objected to the introduction of the three autopsy photographs marked as State's Exhibits 36, 37, and 38. Accordingly, by allowing all of the photographs other than exhibits 36, 37, and 38

to be admitted at trial without objection, Decker did not preserve an appellate review of the district court's exercise of its discretion in admitting the unchallenged photographs. See K.S.A. 60-404; *State v. Shopteese*, 283 Kan. 331, 339, 153 P.3d 1208 (2007) (issues not raised before the trial court cannot be raised on appeal). But *cf. State v. Hawkins*, 285 Kan. 842, 845, 176 P.3d 174 (2008) (setting forth exceptional circumstances permitting new legal theory on appeal). Decker does not establish the existence of exceptional circumstances to excuse the failure to raise the issue below.

At trial, Decker's specific complaint was that the challenged autopsy photographs depicting the inside of the baby's skull were unduly gruesome and highly prejudicial. On appeal, he argues against the photographs' relevance and asserts their prejudicial value outweighed any probative value.

"This court has repeatedly held that the admission of photographs of a decedent, including photographs taken during an autopsy, is not error where the photographs are relevant to matters in issue, such as the fact and manner of death or to assist in understanding a pathologist's testimony." *State v. Randol*, 212 Kan. 461, 466, 513 P.2d 248 (1973); see, *e.g., State v. Warledo*, 286 Kan. 927, 944-46, 190 P.3d 937 (2008); *State v. Smallwood*, 264 Kan. 69, 83, 955 P.2d 1209 (1998) (photos used to corroborate witness testimony admissible even though photos may appear gruesome); *State v. Boyd*, 216 Kan. 373, 377-78, 532 P.2d 1064 (1975). Admission of autopsy photographs can be allowed even where the cause and nature of death is undisputed. See *Warledo*, 286 Kan. at 946 (photographs of blood spatter admissible even though cause of death was undisputed because they helped illustrate the violence with which the defendant acted); *State v. Carter*, 284 Kan. 312, 329, 160 P.3d 457 (2007) ("We recognize the cause and means of death were not at issue in this case; still, the photograph was relevant.").

Here, the photographs had relevance beyond establishing that the death was caused by physical abuse. The time when the abuse occurred was critical. As Decker acknowledges, he defended by pointing to Hendrickson as the most likely culprit who shook the baby and inflicted the physical abuse that led to the child's death.

Thus, Decker had to convince the jury that the injuries were inflicted prior to the time that Hendrickson left the residence to go to work.

However, the coroner opined that the injuries were most likely inflicted within a short time period preceding death, given the absence of swelling in the child's brain. The contested photographs were utilized to explain that opinion. Therefore, the exhibits were highly probative to a critical issue in the case. The photographs do not appear in the record on appeal and, thus, we necessarily defer to the trial court's assessment that their gruesome nature did not override their probative value.

## EVIDENCE OF PRIOR CRIMES OR CIVIL WRONGS

The State introduced Hendrickson's testimony about a prior incident involving an older daughter which occurred over a year before, when the couple was living in Texas. Hendrickson related that she and Decker had been drinking; that she became intoxicated and threw up on the bed; and that she went to take a shower. Her daughter then began to cry and scream. Decker brought the child into the bathroom, and when Hendrickson reached for the infant, Decker pulled the child away, put his hand on her throat, and said that he could kill her at any time.

The State contended that the evidence was relevant under K.S.A. 60-455 to show that the current incidents were not accidents. Decker countered that the prior incident was too dissimilar from the current allegations, so that the only relevance of the evidence was to show a propensity for violence, *i.e.*, the prejudicial effect outweighed any probative value. The district court disagreed, finding that the prior incident was factually similar; that the evidence was relevant to show lack of accident which was a disputed material fact; and that the probative value of the evidence outweighed its prejudicial effect.

K.S.A. 60-455 generally prohibits evidence that the defendant committed a crime or civil wrong on another specified occasion to prove the defendant's general disposition to commit crimes or civil wrongs and thereby provide a basis for inferring that the defendant committed the crime for which he or she is currently being pros-

ecuted. However, "such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." K.S.A. 60-455. If evidence of a prior crime or civil wrong is proffered, this court has required the trial court to implement certain safeguards to eliminate the danger that the evidence will be considered only to prove the defendant's mere propensity to commit the charged crime. *State v. Gunby*, 282 Kan. 39, 48, 144 P.3d 647 (2006). Recently, we explained:

"Evidence of other crimes or civil wrongs committed by a criminal defendant is admissible if relevant to prove one of the eight material facts listed in K.S.A. 60-455 or some other material fact not listed in the statute, if the trial court determines (1) the relevance exists; (2) the material fact is in issue; and (3) the probative value of the evidence outweighs its prejudicial effect. In addition, to avoid error, the trial court must give a limiting instruction informing the jury of the specific purpose for admission." *State v. Reid*, 286 Kan. 494, Syl. ¶ 3, 186 P.3d 713 (2008).

Here, the trial court performed the three-part analysis, making a relevance inquiry as to an identified material fact that was in issue and then weighing probative value and prejudicial effect. See *Gunby*, 282 Kan. at 56-57. The probative element of relevance under a K.S.A. 60-455 analysis is reviewed for an abuse of discretion, with the party alleging an abuse of discretion bearing the burden of proof. *Reid*, 286 Kan. 494, Syl. ¶ 5.

Citing to *State v. Garcia*, 285 Kan. 1, 169 P.3d 1069 (2007), Decker principally challenges the district court's collateral finding that the two incidents were factually similar. He argues that in the first incident, Decker was not the primary caretaker of the child; Decker was drinking; Decker was accused of choking, not shaking, the child; the child did not die; and Decker and Hendrickson were fighting at the time. Decker contends that the only possible similarity between the incidents is the involvement of one of Decker's children, albeit not Risha.

First, we would note that the similarity finding in *Garcia* was actually part of the relevance inquiry and was required because the disputed material fact relied upon in that case was *identity*. *Garcia*, 285 Kan. at 15 (relevance issue is whether the 60-455 evidence is

similar enough to the present crimes charged to help prove identity). Here, the 60-455 evidence was not offered to prove identity, but rather the disputed material fact was whether the injuries were inflicted accidentally, *i.e.*, absence of accident. Nevertheless, even where prior crimes have been used to prove identity, the cases "have emphasized that the crimes need not be identical, only similar." *Garcia*, 285 Kan. at 15; see also *State v. Moore*, 274 Kan. 639, 647, 55 P.3d 903 (2002) ("Under K.S.A. 60-455, prior offenses need not be identical in nature to the offense for which the defendant is on trial. Similarity is sufficient."); *State v. Johnson*, 222 Kan. 465, 469, 565 P.2d 993 (1977) ("When the trial court determines there is a similarity of offenses, which similarity has relevance in proving specific matters in issue, the prior offense may then be admitted.").

In picking out differences between the Texas and Kansas scenarios, Decker conveniently overlooks a strikingly similar element. In both incidents, Decker grabbed an infant by the neck. In this case, Decker admitted that he grabbed Risha by the neck, albeit he said that it was done accidentally while trying to break the child's fall from a couch. The explanation coincidentally explained the bruising on Risha's neck. Indeed, Decker had an accidental explanation for all of the child's injuries. Therefore, we cannot say that the district court abused its discretion in finding that the Texas incident was relevant to show that Risha's injuries were not accidentally inflicted. See *Reid*, 286 Kan. 494, Syl. ¶ 5 ("An appellate court reviews a trial court's determination of the probative element of relevance of K.S.A. 60-455 evidence under an abuse of discretion standard"; the burden of proof is on the party alleging discretion was abused.).

## EXCLUDED TESTIMONY

Decker offered the testimony of Lorna Henson, with whom Hendrickson and her older daughter, Aarron, had lived for a time immediately after Aarron's birth. The defense elicited testimony that Henson had seen Hendrickson treat Aarron roughly. On cross-examination, the State asked the following:

"Q: And then you went ahead and said.Brandi [Hendrickson], you need to find another place to live probably around the end of April, do I have that right?
"A: Yes.
"Q: Okay. Now during that time she was staying at your house . . . you didn't see her do anything abusive to Aarron, did you?
"A: Abusive as in I mean—
"Q: Well she has a baby. You didn't see her hitting her or physically abusing her in any way?
"A: Just a little rougher than I would think you should be.
"Q: Okay, I believe you testified before you thought she had a little rough handling but nothing that you would consider abuse?
"A: Yes."

On redirect, the defense asked Henson if Hendrickson was ever aggressive toward Henson's child. Henson replied, before being interrupted by the State's objection:

"Yes, that's why I asked her to leave my house. She had put Aarron in the car seat . . . and went to make Aarron a bottle. My child . . . went up to grab Aarron's hand, and [sic] it's okay type thing, and Brandi stormed from the kitchen—."

Outside of the jury's presence, the State objected that the line of questioning was outside the scope of cross-examination. Decker argued that the State had opened the door by asking about this living arrangement and about Henson asking Hendrickson to leave the residence. The defense proffered that Henson was going to testify that Hendrickson had been asked to leave the home after Henson saw "Ms. Hendrickson [walk] toward [Henson's] child in an aggressive manner." The trial court sustained the State's objection, finding that the testimony was irrelevant.

On appeal, Decker argues that the trial court abused its discretion and violated his constitutional right to present a defense when it denied him the opportunity to question Henson about the reason why Hendrickson was asked to leave Henson's home. He claims that evidence of prior acts of abuse committed by Hendrickson was relevant to his defense and that the excluded testimony would have evidenced such acts.

We agree that evidence of Hendrickson's prior acts of abuse toward her older daughter would further Decker's theory of defense that Hendrickson was Risha's abuser. Decker was able to get

in that evidence. However, the excluded evidence was that Hendrickson was asked to leave Henson's home because Hendrickson made an aggressive move toward Henson's child, apparently in response to that child grabbing Hendrickson's infant. We are unable to make a logical connection between an aggressive move to *protect* one's own child and the likelihood that the protecting parent would abuse his or her own child. The district court did not abuse its discretion. See *State v. Mathis*, 281 Kan. 99, 106-07, 130 P.3d 14 (2006) (admission or exclusion of evidence lies within the sound discretion of the trial court).

## PROSECUTORIAL MISCONDUCT

Next, Decker contends that the prosecutor improperly shifted the burden of proof to the defendant when, in the rebuttal portion of closing argument, the prosecutor said:

"They [*sic*] saying that Brandi shook the baby when? She shook the baby that night while she's in there feeding her putting her to bed, is that what they want you to believe? They are saying that there's a reasonable doubt about that, that you don't know who did it. Well, you do when you look at all the evidence. And another thing is *he's no longer presumed innocent*. Case is in. Evidence is in. At this point based on everything that we've proved, he's guilty." (Emphasis added.)

Although Decker failed to object, a contemporaneous objection to alleged prosecutorial misconduct during closing argument is not required in order to preserve the issue for appeal; an appellate court will apply the same standard of review regardless of whether the defendant lodged an objection. See *State v. Albright*, 283 Kan. 418, 428, 153 P.3d 497 (2007).

"We employ a two-step analysis in considering claims of prosecutorial misconduct: First, the court must determine whether the prosecutor's statements were outside the wide latitude for language and manner a prosecutor is allowed when discussing the evidence; second, it must determine whether the comments constitute plain error, that is, whether the statements were so gross and flagrant as to prejudice the jury against the accused and deny him or her a fair trial. [Citation omitted.]" *State v. Scott*, 286 Kan. 54, 77, 183 P.3d 801 (2008).

The second step primarily focuses on whether the misconduct is so prejudicial that it denies the defendant a fair trial and requires a particularized harmlessness inquiry. 286 Kan. at 77-78. It re-

quires consideration of three factors: (1) whether the misconduct was gross and flagrant; (2) whether the misconduct showed ill will on the prosecutor's part; and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors. 286 Kan. at 78. None of these factors is individually controlling. Further, the third factor can never override the first two factors, until the harmlessness tests of both K.S.A. 60-261 (prosecutor's statements were inconsistent with substantial justice) and *Chapman v. California*, 386 U.S. 18, 22, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967) (error had little, if any, likelihood of changing the outcome of trial), have been met. 286 Kan. at 78-79. " 'If this can be said, then certainly it will also be true "that the misconduct would likely have little weight in the minds of jurors." ' " 286 Kan. at 79 (quoting *State v. Tosh*, 278 Kan. 83, 97-98, 91 P.3d 1204 [2004]).

A jury is clearly instructed to begin deliberations presuming that the defendant is not guilty. See PIK Crim. 3d 52.02. Obviously, at the time of closing argument, the axiomatic presumption of innocence remained firmly in place. Just as clearly, the prosecutor's comment that "[defendant is] no longer presumed innocent" was an unequivocally false and erroneous statement of law concerning a basic principle of criminal jurisprudence.

The State contends that Decker is taking the statement out of context. It characterizes the argument as being essentially that the jury no longer had to presume Decker was not guilty because the jury had the evidence which proved him guilty. We agree that the concluding segment of the argument, "based on everything that we've proved, he's guilty," would be fair argument. We have no problem with a prosecutor arguing that the State's evidence has *overcome* the presumption of innocence. However, the State's introduction of evidence, *no matter how damning*, does not *terminate* the presumption.

In this case, immediately after saying that the defendant was no longer presumed innocent, the prosecutor stated: "Case is in. Evidence is in." A rational juror could easily interpret the statement, in context, to mean that once the evidentiary portion of the trial is complete, the presumption of innocence no longer applies. Ac-

cordingly, we find that under the first step of the analysis, the prosecutor exceeded the limits of approved rhetoric. See *State v. Blockman*, 19 Kan. App. 2d 56, 61, 863 P.2d 372 (1993), *rev'd on other grounds* 255 Kan. 953, 881 P.2d 561 (1994) (prosecutor's comments during closing argument that defendant was no longer presumed innocent was misstatement of law); *State v. McGautha*, No. 88,652, unpublished Court of Appeals opinion filed March 12, 2004, *rev. denied* 278 Kan. 850 (2004) (statement during closing argument that presumption of innocence was over was misstatement); *State v. Justice*, No. 88,768, unpublished Court of Appeals opinion filed October 10, 2003, *rev. denied* 277 Kan. 926 (2004) (prosecutor's statement "[h]e is no longer presumed innocent" was erroneous); *Morales v. State*, 143 P.3d 463, 467 (Nev. 2006) (statement by prosecutor that there was no longer a presumption of innocence because the State satisfied its burden constituted plain error); *Williams v. State*, 658 P.2d 499, 500-01 (Okla. Crim. 1983) (improper for prosecutor to argue defendant was no longer presumed innocent during closing arguments).

While we find that viewing the comment in its context does not save it from being error, the context does favor the State in the second step of the analysis. It does appear that the prosecutor was attempting to convey that the State had overcome the presumption of innocence by "everything that [it] proved." We see no manifestation of ill will. Moreover, the misconduct did not rise to the level of being so gross and flagrant as to constitute plain error. The comment likely had little weight in the minds of the jurors, and we find that the error was harmless.

## FAILURE TO GIVE ACCOMPLICE INSTRUCTION

Decker asserts that the district court erred in refusing to give a cautionary jury instruction on accomplice testimony. In *State v. Simmons*, 282 Kan. 728, 733, 148 P.3d 525 (2006), we set forth our review standard:

" 'When the trial court refuses to give a requested instruction, an appellate court must view the evidence in a light most favorable to the party requesting the instruction. . . . [A]n appellate court cannot consider the requested instruction in isolation. Rather, the court must consider all of the instructions together as a

whole. If the instructions as a whole properly and fairly state the law as applied to the facts of the case, and the jury could not reasonably be misled by them, the instructions are not reversible error even if they are in some way erroneous. [Citation omitted.]' *State v. Jackson*, 280 Kan. 541, 549-50, 124 P.3d 460 (2005)."

The necessity for an accomplice instruction arises when "a witness testifies that he or she was involved in the commission of the crime with which the defendant has been charged." *Simmons*, 282 Kan. at 733. Decker contends that Hendrickson must be considered an accomplice because she failed to report his suspected child abuse and that failure was confirmed by her plea bargain. Decker's theory is refuted by our holding in *Simmons* that "the mere failure to stop a crime or to report a crime does not make one an accomplice." 282 Kan. at 738.

At trial, Decker did not portray Hendrickson as an accomplice. His defense theory was to paint her as the sole perpetrator of the physical abuse. Moreover, the defense challenged Hendrickson's credibility and made certain the jury was aware that she had received a plea bargain in exchange for her testimony. Not only is it clear that Hendrickson does not meet the definition of an accomplice, but viewing the evidence in the light most favorable to Decker, it is equally clear that the jury could not have been misled or confused. The district court did not err in refusing to give the instruction.

## CUMULATIVE ERROR

Finally, Decker argues that the evidence against him was circumstantial, so that the cumulative effect of the alleged trial errors mandate a reversal of his conviction. However, we do not get to an analysis of the strength of the evidence unless we have found multiple errors; one error will not support a cumulative effect theory. Here, we have found the only error to be prosecutorial misconduct in closing argument. Accordingly, Decker's final issue must fail as well.

Affirmed.