NOT DESIGNATED FOR PUBLICATION

No. 125,971

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SETH R. COLLINS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; KEVIN M. SMITH, judge. Submitted without oral argument. Opinion filed June 21, 2024. Convictions affirmed, sentence vacated in part, and case remanded with directions.

*Samuel Schirer*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before COBLE, P.J., GREEN, J., and TIMOTHY G. LAHEY, S.J.


PER CURIAM: A jury convicted Seth R. Collins of unintentional second-degree murder and aggravated battery after an altercation between Collins and multiple women ended with one fatality and another injury. On appeal, Collins argues multiple prosecutorial and instructional errors warrant a new trial. But while he presents at least one persuasive claim of prosecutorial error, Collins does not show he was denied a fair trial based on his allegations against the prosecutors and the district court. We agree with Collins and the State, however, that the district court erred in sentencing him based on an

1

improper severity level. After thorough review, we affirm Collins' convictions, vacate the sentence for Count I, and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 4, 2016, the State charged Collins with one count of second-degree murder, in violation of K.S.A. 2015 Supp. 21-5403(a)(1) (Count I), and one count of aggravated battery, in violation of K.S.A. 2015 Supp. 21-5413(b)(2)(B), (g)(2)(D) (Count II). Soon after, Collins moved to dismiss the State's charges under K.S.A. 2015 Supp. 21-5220 et seq., commonly known as the "stand your ground" law, arguing he was immune from prosecution because he lawfully used force in defense of a person or property.

The district court held an evidentiary hearing on Collins' motion and the Kansas Supreme Court issued multiple opinions related to his immunity claim. Ultimately, the district court granted Collins immunity from prosecution and dismissed the charges. But on the State's appeal, a panel of this court reversed the district court's immunity ruling in *State v. Collins*, 56 Kan. App. 2d 140, 425 P.3d 630 (2018), and our Supreme Court affirmed this court's ruling. *State v. Collins*, 311 Kan. 418, 461 P.3d 828 (2020). The Supreme Court found the State met its burden of showing probable cause to believe Collins' use of self-defense was not justifiable under the statute and remanded the case for trial. 311 Kan. at 433-34.

On remand, the district court held a four-day jury trial. Over the course of the first three days, the jury heard the testimony of the States' witnesses, including law enforcement and eyewitnesses, before Collins testified on his own behalf.

The jury heard evidence that Collins returned to his apartment complex one night with his two daughters after going out for ice cream. When Collins tried to park his vehicle in a parking spot, he was unable to pull in because another vehicle's door was

2

blocking the space. The vehicle blocking the space belonged to Luz Toral, who was sitting in the driver's seat. And Toral's friend, Shayla Brown, was standing outside the vehicle talking to Toral. Shayla lived at the same apartment complex with her twin sister, Kayla Brown, and their mother, Trishall Dear.

After Collins was unable to park in the spot and parked elsewhere, a dispute broke out between Collins and the women as he walked to the apartments. Although testimony differed as to who started the altercation and who used racial insults toward whom, the testimony was consistent that Collins and the women—Shayla, Toral, and two other women, Kayla and Coriaynia Porter—engaged in a physical fight. One witness, a member of the complex's staff, testified to seeing Collins "receiving a pummeling" by the women as they hit Collins with fists, pulled on his shirt, and punched him in the back of the head and face. The staff member testified the fight "went on for a little while" and Collins never defended himself. Another tenant witnessed the fight while moving out of his apartment and testified to seeing the dispute last 5 to 15 minutes before he and a few others broke it up.

Collins testified a neighbor escorted his daughters away from the fight, but he eventually located them after the altercation ended. His eldest daughter testified she called the police as she escorted her sister away from the fight. But about 10 to 15 minutes later, Collins realized he lost his glasses during the altercation and went back outside to find them.

When Collins reached the bottom of the stairs after leaving his apartment, he spoke with Dear, the twins' mother, and told her he was looking for his glasses. Dear did not object to Collins looking for his glasses, which he found quickly.

But as Collins walked back up the stairs to his apartment, the events took a fatal turn. Shayla testified she was going up the stairs with her mom for cigarettes when

3

Collins started swinging a folding knife at them without provocation. Unknown to Shayla at the time, Kayla had followed them up the stairs. And when Collins brandished the knife, Kayla was stabbed in the neck. Shayla reacted by pulling Collins down the stairs by his shirt, which resulted in her sustaining a stab wound to her arm. According to Shayla, all four people—Collins, Dear, Shayla, and Kayla—tumbled down the stairs as she pulled on Collins' shirt. Shayla testified she attempted to get the knife from Collins as they landed on the ground, but she became distracted when she saw Kayla's injuries.

Collins, on the other hand, testified that Kayla, Shayla, and Dear followed him up the stairs as he walked back to his apartment. And they were "yelling, there is screaming, and their pace is very quick, it is stomping up the stairs." According to Collins, he was afraid as the women followed him up the stairs. And he "needed them to back off" before he opened the door to the apartment. Feeling cornered as they closed in behind him and having not yet made it to the top step, Collins testified he turned to face them, opened his pocketknife, and "told them to back off." When he turned around to retreat to his home, he felt someone pull on his shirt, and they all tumbled to down the stairs. Collins said he tried to control his fall, all while holding onto the knife in his right hand. Although the knife moved as his arms moved, he testified he had no "intent to slash, but it was an intent to have a better fall." Collins testified he "felt the blade go into something" but he was not trying to hurt anyone by brandishing it.

The jury then heard the undisputed evidence that Kayla was stabbed twice during the encounter on the stairs—once on the left side of her neck and once in her upper back. An autopsy later determined the neck wound was fatal.

At the close of evidence, the district court instructed the jury on second-degree intentional murder, along with multiple lesser included offenses. The district court also instructed the jury on Collins' claims of self-defense and defense of another. Ultimately,

4

the jury convicted Collins of the lesser offense of second-degree unintentional murder, in addition to finding him guilty of aggravated battery.

Before sentencing, a presentence investigation (PSI) report found Collins had no scorable criminal history. But the same report mistakenly reported him as being convicted of second-degree intentional murder, rather than second-degree unintentional murder. Based on the PSI, the district court sentenced Collins as if he committed a severity level 1 offense, and ordered he serve 147 months' imprisonment. The sentencing court ordered a concurrent, seven-month term for his aggravated battery conviction.

Collins appeals.

### THE DISTRICT COURT ERRED IN SENTENCING COLLINS

In his first issue on appeal, Collins contends the district court erred when it relied on an incorrect severity level to sentence him to 147 months' imprisonment. The State concedes the district court's error.

Collins admits he did not object to his sentence when the district court announced it. But as he argues, courts "may correct an illegal sentence at any time while the defendant is serving such sentence." K.S.A. 22-3504(a). And this includes a defendant's challenge to a sentence for the first time on appeal. *State v. Hambright*, 310 Kan. 408, 411, 447 P.3d 972 (2019).

Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which this court has unlimited review. *State v. Sartin*, 310 Kan. 367, 369, 446 P.3d 1068 (2019). Under K.S.A. 22-3504, a sentence is illegal when, among other errors, it does not conform to the applicable statutory provisions, either in character or the term of punishment. *Hambright*, 310 Kan. at 411.

5

Here, Collins persuasively argues his sentence on Count I is illegal because it does not conform to the applicable statutory provisions. The jury convicted him of second-degree unintentional murder, a severity level 2 offense. See K.S.A. 2015 Supp. 21-5403(b)(2). But when the district court sentenced Collins, it erred by imposing a sentence for a severity level 1 offense and ordering he serve 147 months' imprisonment. Under K.S.A. 2015 Supp. 21-6804(a), the maximum prison sentence allowed for a severity level 2 conviction, with Collins' history score of I, is 123 months.

As a result, Collins is serving a sentence on Count I that does not conform to the statutory maximum permitted for his severity level 2 conviction. Because it is an illegal sentence under K.S.A. 2015 Supp. 22-3504, we vacate his sentence for Count I, and remand this case for resentencing.

ANY PROSECUTORIAL ERROR IS HARMLESS

In his second argument, Collins claims the prosecutor committed two errors during closing argument which deprived him of a fair trial. First, he alleges the prosecutor improperly argued the jury could infer Collins' guilt from the fact of his arrest. Second, he contends the prosecutor misstated the trial evidence. As a result, Collins believes the State cannot meet its burden of showing the errors did not contribute to the jury's verdict.

*Applicable Legal Principles and Preservation*

We use a well-known, two-step process to evaluate claims of prosecutorial error: error and prejudice. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the

6

appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

Relevant to Collins' claims here, our Supreme Court has found a prosecutor's comments fall outside this wide latitude if they misstate the applicable law, misstate the facts in evidence, inflame the prejudices of the jury, or improperly divert the jury's attention. See *State v. Lowery*, 308 Kan. 1183, 1208-09, 427 P.3d 865 (2018) ("'A prosecutor should not make statements intended to inflame the passions or prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law.'"); *State v. Davis*, 306 Kan. 400, 413-14, 394 P.3d 817 (2017) ("A prosecutor 'cross[es] the line by misstating the law,'" and "'a prosecutor's arguments must remain consistent with the evidence.'").

The alleged prosecutor errors occurred during the State's closing argument and its rebuttal closing argument. Appellate courts will review prosecutorial errors claims based on a prosecutor's comments made during voir dire, opening statements, or closing arguments even without a timely objection. *State v. Bodine*, 313 Kan. 378, 406, 486 P.3d 551 (2021). But the court may figure the presence or absence of an objection into the analysis of the alleged error. 313 Kan. at 406. Here, Collins objected at trial to his first claim of error, but not to the second.

*Prosecutorial Error Claim #1: The Prosecutor Committed Harmless Error by Improperly Arguing the Jury Could Infer Collins' Guilt*

First, during the State's initial closing argument, the prosecutor stated:

"[W]hat [Collins] did that night was not self-defense because he knew he was going to jail. You don't go to jail for self-defense. You go to jail for killing somebody intentionally or recklessly. You go to jail when your actions are not reasonable. When they are not subjectively reasonable and they are not objectively reasonable."

Defense counsel immediately objected and the district court heard argument outside the jury's presence. Defense counsel argued the prosecutor's statement "invades the province of the jury . . . specifically saying because the person was arrested and went to jail that means he's guilty of that charge." The prosecutor responded that was not what he was trying to say and offered to clarify his statement. The court sustained the objection and the prosecutor continued with his closing argument, stating:

"Yeah, you want to be clear, you don't get convicted of crimes when you act subjectively and you act objectively reasonable. If you believe contrary to his testimony that he was acting in self-defense and that self-defense was reasonable and not excessive, then find him not guilty. But his words say this wasn't subjectively reasonable. Your observations can say that his actions were not objectively reasonable. And for that reason, ladies and gentlemen, he's guilty. And I'm asking you to find that he is extremely indifferent to the value of human life at the very least and during that, he recklessly killed Kayla Brown and he recklessly caused bodily harm to Shayla with a knife and I'm asking you to find him guilty."

The prosecution's comments seem to be based on the following trial testimony, in which Collins said he called his ex-wife to pick up their daughters because he believed he would be taken to jail:

8

"[COLLINS:] I took my phone and I called . . . my ex-wife, and I told her to get up here immediately, get up here as soon as possible and that I was most likely going to jail and she needs to get here and get the kids.

"[DEFENSE COUNSEL:] Okay. Why at this point did you think that you were going to go to jail and get the kids?

"[COLLINS:] Because someone just got hurt and I knew the cops were on their way. I figured I would at least be detained for awhile.

"[DEFENSE COUNSEL:] Okay. So you knew there was going to be an investigation; is that correct?

"[COLLINS:] Correct.

"[DEFENSE COUNSEL:] And you wanted to make sure that your—there was someone there to take care of your children, correct?"

"[COLLINS:] Yes."


Despite his testimony, Collins contends the prosecutor's first statement in closing—arguing his actions were "not self-defense because he knew he was going to jail"—"toed the line" of permissible argument because jurors could understand it "to mean that only persons who have committed crimes are taken to jail." And Collins believes the prosecutor's next comments, about when people do and do not go to jail, "almost guaranteed" the jury believed they could infer guilt simply from his arrest. As a result, Collins argues the prosecutor's statements "affronted" his constitutional right to be presumed innocent until proven guilty.

In Kansas, a defendant is presumed innocent until proven guilty. See K.S.A. 21-5108(b) ("A defendant is presumed to be innocent until proven guilty."); *State v. Ross*, 310 Kan. 216, 221, 445 P.3d 726 (2019) ("Every criminal defendant has a constitutional right to the presumption of innocence."). In this vein, Collins relies on United States Supreme Court precedent to support his argument, contending jurors must "'put away from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment, and to reach their conclusion solely from the legal evidence adduced.'" *Taylor v. Kentucky*, 436 U.S. 478, 484-85, 98 S. Ct. 1930, 56 L. Ed 2d 468 (1978). The

9

*Taylor* Court noted that "'there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law.'" 436 U.S. at 483 (quoting *Coffin v. United States*, 156 U.S. 432, 453, 15 S. Ct. 364, 39 L. Ed. 481 [1895]).

Our Kansas Supreme Court has determined a prosecutor's statement during closing argument that a defendant was no longer presumed innocent "was an unequivocally false and erroneous statement of law concerning a basic principle of criminal jurisprudence." *State v. Decker*, 288 Kan. 306, 315, 202 P.3d 669 (2009). Under a previous version of the prosecutorial error analysis, the *Decker* court found it had "no problem with a prosecutor arguing that the State's evidence has *overcome* the presumption of innocence," but the State's evidence—"no matter how damning"—does not *terminate* the presumption altogether. 288 Kan. at 315.

Here, unlike in *Decker*, the prosecutor did not outright state Collins was no longer presumed innocent. But Collins argues the prosecutor's statements told the jury they could infer guilt—or infer he is no longer presumed innocent—by implying someone is guilty if they are arrested and jailed for the suspected commission of a crime.

Here, the State argues the prosecutor was permitted to make his statements because he was referencing Collins' own testimony and mindset and "arguing that [Collins'] own belief that he was going to jail demonstrated consciousness of guilt." See *State v. Huddleston*, 298 Kan. 941, 961, 318 P.3d 140 (2014) ("Kansas and other state cases have held that evidence demonstrating a defendant's consciousness of guilt can be material to several issues in a criminal case, including intent, identity, plan, or other matters."). And if Collins were disputing whether he actually stabbed Kayla, and ultimately caused her death, then this argument could be persuasive. But neither Collins, nor the State, dispute this fact. Rather, the dispute concerns whether Collins acted in self-defense.

10

Collins' own testimony supports the State's argument that Collins knew he would be going to jail based on Kayla's injuries. But nothing in Collins' testimony suggests he believed he was guilty of a crime and not just defending himself—he only understood a police response and investigation would be forthcoming. It was impermissible for the prosecutor to imply Collins was guilty of murdering Kayla, and not acting in self-defense, based on his testimony saying he could be facing detention. As he explained, Collins thought he "would at least be detained for awhile" because he knew the police were called and an investigation would occur.

Contrary to the State's argument, Collins' testimony did not show a consciousness of guilt. Rather, it shows he was reasonably aware of the immediate consequences of the evening's events and concerned about his children. We find the prosecutor's comments outside the wide latitude afforded to prosecutors and therefore erroneous.

But we must agree with the State that despite the prosecutor's improper comments, the prosecutor subsequently clarified the statements after the district court sustained the objection. As noted above, the prosecutor refined his argument by stating that "you want to be clear, you don't get convicted of crimes when you act subjectively and you act objectively reasonable." Then the prosecutor pointed specifically to the evidence to argue Collins' testimony and actions were not objectively reasonable, "If you believe contrary to his testimony that he was acting in self-defense and that self-defense was reasonable and not excessive, then find him not guilty. But his words say this wasn't subjectively reasonable. Your observations can say that his actions were not objectively reasonable."

As the State argues, the prosecutor's full argument on this point cured any confusion the prosecution's earlier misstatements may have induced. The clarifying comments reference the applicable legal standards—objective and subjective reasonableness—and the evidence which would tend to support the State's argument. The prosecutor told the jury to find Collins not guilty if they believed his actions were not

11

excessive and reasonable, but then argued contrary to this point by calling attention to Collins' words and actions to suggest the jury find his actions not objectively reasonable.

And Collins ignores other occasions where the jury was told of Collins' right to be presumed innocent. During the State's closing argument, the prosecutor said, "So let's talk about a few things. Right off the top, I want to talk about presumptions. First thing, he is presumed innocent. That's a presumption we all enjoy when charged with a crime." Then, as noted, the prosecutor clarified the misleading comments made during the self-defense argument. Before the prosecutor's closing arguments, the district court instructed the jury on Collins' innocence, stating, "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty." And the written jury instructions provided to the jury said the same. See *State v. Brown*, 316 Kan. 154, 170, 513 P.3d 1207 (2022) ("Appellate courts often weigh these instructions when considering whether any prosecutorial error is harmless . . . we presume the jurors follow the instructions."). But see *State v. Slusser*, 317 Kan. 174, 193, 527 P.3d 565 (2023) (finding jurors are presumed to follow instructions unless the prosecutor "mischaracterized the instruction in a legally significant and material manner").

Consequently, while the prosecutor's initial comment fell outside the wide latitude afforded to prosecutors when discussing the applicable law, the prosecutor's follow up argument, along with the multiple reminders of the presumption of Collins' innocence, were enough to clarify any misstatement of the controlling law. See *Lowery*, 308 Kan. at 1208-09; *Davis*, 306 Kan. at 413-14. We find the State met its burden of showing any error the prosecutor made in implying Collins' guilt based on his arrest was harmless. *Sherman*, 305 Kan. at 109.

*Prosecutorial Error Claim #2: Even if the Prosecutor Misstated the Evidence, Any Error was Harmless*

In the State's rebuttal closing argument, a different prosecutor acknowledged conflicts in witness testimony and told the jury it was their "job to sort through it and look for the consistencies." Collins claims the prosecutor then misstated the facts as follows:

"What all the witnesses testified to is when the defendant comes back downstairs and is looking around for his glasses, the atmosphere is calm. The defendant doesn't jump anyone, but those girls don't jump him either. Everyone is calm. What changes? What makes it not calm? What choices did [Collins] make?

"Well, *according to Ms. Bidwell, and according to Mr. Neider and according to Ms. Carr*, the choice that the defendant made was to walk up to those girls that had just beat him to a pulp and call them dumb Bs and stupid Ns. And then to tell their mother to keep their Bs on a leash. That was the defendant's choice, and that choice had repercussions." (Emphasis added.)

For the first time on appeal, Collins argues the prosecutor inaccurately attributed witness Brittany Carr's trial testimony to that of witnesses Thomas Neider and Eva Bidwell, which was an erroneous statement of the facts. In response, the State argues the prosecutor's comments, when read in context, did not suggest all three witnesses offered identical testimony. Rather, the State argues the prosecution made a valid point—that is, Carr and Bidwell both heard defendant refer to the girls as 'bitches' and 'n***ers' in the parking lot, and all three witnesses heard Collins comment something as he reentered the building.

Carr, a bystander who was moving out of the apartment complex at the time of the incident, testified to hearing Collins mumbling under his breath, calling the women the "N word, B word," as he searched for his glasses. She then testified to overhearing

Collins tell Dear "to keep her bitches on a leash" as he walked into the building for the last time.

As for Bidwell, Carr's mother-in-law, who was helping her move, she testified to witnessing Collins pause at the door at the bottom of the stairs after finding his glasses, where Dear was standing, and say something. But during her trial testimony, she said she did not hear what Collins said. A law enforcement officer also testified and said, during an interview a month after the incident, Bidwell told him Collins called the women "dumb bitches and stupid n***ers" as he walked by the car with the twins when he was reentering the building. The officer similarly testified that Bidwell told him she witnessed Collins pause and talk to Dear at the bottom of the stairs, but she did not hear what Collins said to Dear.

But Neider—a maintenance worker at the complex—testified to overhearing the women call Collins "different racial obscenities" from inside his apartment during the initial confrontation. After Collins had gone upstairs, then back outside, Neider witnessed Collins say something just before he turned around to walk back upstairs, but he also could not hear what Collins said. He testified that "[w]hatever [Collins] said wasn't liked, [when] he turned around to walk back upstairs, they started chasing him, [and] he started running."

As Collins argues, the record shows only Carr testified to overhearing exactly what Collins said to Dear as he returned to the stairs after finding his glasses. Because of this clear evidence, it was a misstatement of the facts to attribute Carr's testimony to additional witnesses. Neither Bidwell nor Neider testified to hearing Collins use offensive language against the twins or Dear in that moment. The prosecutor could have suggested all three witnesses' testimony was consistent in that they saw Collins pause to talk to Dear before walking up the stairs, but that is not what the prosecutor said.

14

The prosecutor's comments detailing Collins' use of racial phrases after finding his glasses and heading up the stairs was likely outside the wide latitude afforded to prosecutors because it was inconsistent with the evidence presented at trial. *Davis*, 306 Kan. at 413-14. But even assuming the prosecutor committed an error, the State met its burden of showing any error was harmless. See *Sherman*, 305 Kan. at 109-11 (articulating the State's burden to demonstrate there is no reasonable possibility the error contributed to the verdict).

We must pause to confront the State's initial argument regarding the burden of proof here. The State suggests the defendant, rather than the State, should bear the burden of showing a prosecutor 's error warrants reversal. As the State argues, "this used to be the rule in Kansas, until it was modified in *State v. Ward*, 292 Kan. 541, 568-69, 256 P.3d 801 (2011)." It argues our Supreme Court wrongly decided *Ward* and suggests "the burden should be on defendant to prove prejudice in [this] instance." Regardless, we are duty bound to follow Kansas Supreme Court precedent unless there is some indication the Supreme Court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017). The State proffers no argument suggesting the Kansas Supreme Court intends to depart from its position in *Ward*, and we find no such indication.

More persuasive is the State's contention that, even if error, the misstatement did not affect the verdict. To meet its burden of showing Collins was not prejudiced, the State argues the prosecutor was pointing to Collins' behavior as escalating a calm situation upon finding his glasses—regardless of the words heard, all three witnesses confirmed hearing Collins say something to the twins' mother as he reentered the building.

The prosecutor's full argument surrounding the misstatement of the facts was generally referring to Collins' alleged provocation of the women and the resulting "repercussions." That is, the prosecutor pointed out the common version of events all

15

three witnesses testified to—Collins came downstairs after the initial confrontation and the scene was calm until he said something to Dear that appeared to provoke the women into chasing him up the stairs.

And before making this argument, the prosecutor told the jury there was "a lot of conflicting testimony" about what happened and reminded the jury it was their job to sort through the testimony. The jury was aware of the conflicting testimony and it was the jury's duty to decide which witnesses were credible.

In light of the consistencies in witness testimony, the prosecutor's argument as a whole, and the warning to the jury regarding inconsistencies, even if the prosecutor exceeded her latitude in attributing the alleged "leash" comment to witnesses other than Carr, the State has shown any error did not affect the jury's verdict.

THE DISTRICT COURT DID NOT ERR BY FAILING TO INSTRUCT THE JURY ON THE STATE'S BURDEN TO DISPROVE COLLINS' SELF-DEFENSE CLAIM

In his third issue on appeal, Collins argues the district court committed clear error when it departed from the Pattern Instructions for Kansas (PIK) guidance and neglected to provide jury instruction clarifying the State's burden of disproving his claim of self-defense beyond a reasonable doubt. The State contends Collins cannot show the district court committed clear error because "the instructions as a whole . . . informed the jurors that the burden of proof was on the State."

When reviewing a claim that a district court has committed an error by failing to issue a jury instruction, we engage in a four-step analysis:

> "First, the court considers the reviewability of the issue from both jurisdiction and
> preservation viewpoints, exercising an unlimited standard of review; next, the court
> applies an unlimited review to determine whether the instruction was legally appropriate;

16

then, the court determines whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and, finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011)." *State v. Bentley*, 317 Kan. 222, 242, 526 P.3d 1060 (2023).

Here, Collins admits he did not request an instruction informing the jury of the State's burden to disprove his affirmative defenses. Because he did not object to the claimed instructional error, we apply the clear error standard required under K.S.A. 22-3414(3). In *Bentley*, our Supreme Court explained the statutory clear error standard:

"Under that standard, the reviewing court determines whether it is firmly convinced that the jury would have reached a different verdict had the instruction error not occurred. The defendant has the burden to establish reversibility, and, when examining whether the defendant has met that burden, the reviewing court makes a de novo determination based on the entire record." 317 Kan. at 242 (citing *State v. Timley*, 311 Kan. 944, 955, 469 P.3d 54 [2020]).

At Collins' request, and after finding the trial evidence supported an instruction on self-defense and the defense of another, the district court instructed the jury on both. But although the district court issued a general instruction informing the jury of the State's burden of proof, it did not provide instruction on the State's burden of disproving Collins' affirmative defenses beyond a reasonable doubt.

The language of the district court's affirmative defense instruction largely mirrors PIK Crim. 4th 52.200 (2021 Supp.). And, the first "Notes on Use" paragraph for this PIK instruction suggests an additional instruction on burden of proof should have been provided: "If this instruction is used, PIK 4th 51.050, Defenses—Burden of Proof, should be given." PIK Crim. 4th 52.200. PIK Crim. 4th 51.050 (2020 Supp.) provides, in

17

part, that the "State has the burden to disprove this defense beyond a reasonable doubt. The State's burden of proof does not shift to the defendant."

Despite the instruction being both factually and legally appropriate, the district court failed to provide this additional burden of proof instruction. Our Supreme Court has found defendants who assert a self-defense theory at trial are entitled to jury instructions on the State's burden to prove beyond a reasonable doubt that the defendant did not act in self-defense. See *State v. Buck-Schrag*, 312 Kan. 540, 551-54, 477 P.3d 1013 (2020); *State v. Staten*, 304 Kan. 957, 963-67, 377 P.3d 427 (2016).

But despite finding the district court erred in failing to give this instruction, our Supreme Court, in *Buck-Schrag* and *Staten*, found a district court's error is not clear error when the instructions as a whole ensure the court accurately conveyed the law. *Buck-Schrag*, 312 Kan. at 553 (finding the district court did not err based on the whole of the instructions but noting the instructions "could have been clearer if they parroted the language of the statute by explicitly informing the jury that the State had to disprove the self-defense theory beyond a reasonable doubt"); *Staten*, 304 Kan. at 967 (while the district court erred in failing to give the burden of proof instruction for the affirmative defense of self-defense, it was not clear error based on "the instructions as a whole as well as the nature of the evidence supporting Staten's claim of self-defense").

Even before *Buck-Schrag* and *Staten*, Kansas precedent shows district courts did not commit clear error in failing to give an instruction on the State's burden to disprove a defendant's affirmative defense for multiple reasons that apply here. See, e.g., *State v. Cooperwood*, 282 Kan. 572, 580-82, 147 P.3d 125 (2006) (affirming the holding in *State v. Crabtree*, 248 Kan. 33, 40, 805 P.2d 1 [1991], after reviewing much of the above precedent, to find the district court did not commit clear error when it failed to provide the instruction on the State's burden when the defendant raises an affirmative self-defense claim); *State v. Sperry*, 267 Kan. 287, 294-95, 978 P.2d 933 (1999), *disapproved of on*

18

*other grounds by State v. King*, 288 Kan. 333, 344-45, 204 P.3d 585 (2009) (finding the instructions as a whole covered the subject of the burden of proof when a self-defense instruction was given); *Crabtree*, 248 Kan. at 40-41 (finding the trial court should have given the instruction on the State's burden, but "when the instructions are considered as a whole and in light of the facts of the case, we cannot say the failure to give [the instruction] was clearly erroneous"); *State v. Osbey*, 238 Kan. 280, 286, 710 P.2d 676 (1985) ("Error cannot be predicated on the refusal to give specific instructions where those which were given cover and include the substance of those refused.").

As in these cases, a review of the district court's instructions here shows the jury was instructed on everything necessary for consideration of the States' burden of proof. As in *Crabtree*, the general burden of proof instruction informed the jury that "the defendant never has to prove himself not guilty." 248 Kan. at 40. Jury instruction No. 6 informed the jury: "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty." The same instruction similarly reflects the State's burden beyond a reasonable doubt:

> "The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find the defendant guilty."

In addition to this general burden instruction, jury instruction Nos. 9, and 11-14 informed the jury that certain claims "must be proved" to establish the various offenses, or lesser offense, charged by the State. And jury instruction No. 10 informed the jury that they "may find the defendant guilty" of a lesser offense and "[w]hen there is a reasonable doubt as to which of two or more offenses defendant is guilty, he may be convicted of the lesser offense only, provided the lesser offense has been proven beyond a reasonable doubt." Jury instruction No. 15, as noted previously, detailed Collins' affirmative defense

claims of self-defense and defense of another person. Jury instruction Nos. 16 and 17 detailed when a person is not permitted to claim self-defense, and jury instruction No. 18 informed the jury that "[t]he defendant may be convicted or acquitted on any or all of the offenses charged."

When viewing all the instructions together, the district court provided all the necessary instructions for informing the jury of the State's burden in response to Collins' affirmative defenses. And, just as important to our analysis is the fact that Collins testified at trial that he did not act in self-defense—he was merely swinging his arms, flailing as he was falling. We find, then, the district court did not commit clear error when instructing the jury on Collins' claim of self-defense, as we are not convinced the jury would have reached a different verdict even if the missing instruction had been given. See *Staten*, 304 Kan. at 969.

### THE DISTRICT COURT DID NOT ERR IN INSTRUCTING THE JURY ON THE LESSER INCLUDED MANSLAUGHTER OFFENSES

In his fourth issue on appeal, Collins claims the district court clearly erred when it instructed on the lesser included offenses of voluntary and involuntary manslaughter because the court omitted the conjunctions between each parenthesized means of committing those offenses, and the failure to include the conjunctive language confused the jury. Collins asserts this was clear error because it swayed the jury from a lesser manslaughter verdict. In response, the State argues we need not reach Collins' argument, or alternatively, the merits of his claim are unsupported by the record.

As with his previous argument, Collins did not object to the district court's instruction when it was provided at trial. Again, we apply a clear error standard under K.S.A. 22-3414(3) when a defendant makes a claim of instructional error but did not object to the district court's jury instructions. And Collins bears the burden of showing

20

the jury would have reached a different verdict had the instruction error not occurred. *Bentley*, 317 Kan. at 242.

Here, the district court's voluntary manslaughter elements jury instruction No. 12 read:

"If you do not agree that the defendant is guilty of murder in the second degree (unintentional), you should then consider the lesser included offense of voluntary manslaughter.

"To establish this charge, each of the following claims must be proved:

1. The defendant knowingly killed Kayla Brown.

2. It was done (upon sudden quarrel) (in the head of passion) (upon an unreasonable but honest belief that circumstances existed that justified deadly force in defense of a person).

3. This act occurred on or about the 30th day of April, 2016, in Sedgwick County, Kansas.

"A defendant acts knowingly when the defendant is aware that his conduct was reasonably certain to cause the result complained about by the State."

And the district court's involuntary manslaughter elements jury instruction No. 13 read:

"If you do not agree that the defendant is guilty of voluntary manslaughter, you should then consider the lesser included offense of involuntary manslaughter.

"To establish this charge, each of the following claims must be proved:

1. The defendant killed Kayla Brown.

2. The killing was done (recklessly) (during the commission of a lawful act in an unlawful manner).

3. This act occurred on or about the 30th day of April, 2016, in Sedgwick County, Kansas."

"A defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk that a result of the defendant's actions will follow.

21

"This act by the defendant disregarding the risk must be a gross deviation from the standard of care a reasonable person would use in the same situation."

Collins claims district courts "must avoid instructing jurors in a manner likely to cause them confusion." This principle is generally true, though Collins fails to provide support for the "must" language he provides. Regardless, in *State v. Robinson*, 303 Kan. 11, 284, 363 P.3d 875 (2015), upon which Collins relies, the Kansas Supreme Court found an instruction erroneous when it found the instruction's language "was incomplete, inaccurate, and confusing." And similarly in *State v. Horton*, 300 Kan. 477, 491, 331 P.3d 752 (2014), our Supreme Court stated a reviewing court "considers the instruction as a whole . . . to see whether it properly and fairly stated the law as applied to the facts of the case and *could not have reasonably misled the jury*." (Emphasis added.)

Collins argues the second element of each jury instruction was misleading. In each of the instructions, he contends by placing parentheses around each possible means of committing the crime, without including the word "or" between each parenthesized means, the district court "almost certainly misled the jury." He claims a juror reading the instructions is likely to believe that each of the parenthesized means would be required, rather than only one being necessary.

But Collins admits the district court's instructions matched the written PIK instructions for those offenses. See PIK Crim. 4th 54.170 (2019 Supp.) and PIK Crim. 4th 54.180 (2019 Supp.); *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018) (holding the Kansas Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions'"). Even so, he argues when the trial evidence supports multiple means of committing manslaughter, the district court should include the word "or" between the parenthetical means.

22

*The Jury May Not Have Considered the Lesser Included Offense Instructions*

Before addressing the merits of Collins' claim, we note a distinct possibility that Collins cannot establish he was prejudiced by any instructional error because the challenged instructions included a transitional statement, informing the jury to consider voluntary or involuntary manslaughter only if it did not agree he was guilty of the murder charges. See *Sola-Morales v. State*, 300 Kan. 875, 886, 335 P.3d 1162 (2014).

In *Sola-Morales*, an inmate sought habeas relief arguing his trial counsel was ineffective for failing to object to the district court's alleged erroneous involuntary manslaughter instruction. 300 Kan. at 884. When his claim reached our Supreme Court, the court disposed of the claim by finding the inmate could not establish he was prejudiced by his trial counsel's failure to object to the alleged erroneous instruction because the jury never considered the lesser offenses:

> "The given instruction begins with a transitional statement that offers an orderly method by which the jury can consider possible verdicts. See *State v. Lawrence*, 281 Kan. 1081, 1091, 135 P.3d 1211 (2006). That provision instructed the jury to consider involuntary manslaughter only if it did not agree the defendant is guilty of second-degree murder or voluntary manslaughter. The jury found Sola-Morales guilty of voluntary manslaughter, meaning it never considered the allegedly incomplete instruction for the lesser offense of involuntary manslaughter. See *State v. Tague*, 296 Kan. 993, 1008, 298 P.3d 273 (2013) (jury presumed to follow instructions). So Sola-Morales could not have suffered prejudice from his counsel's failure to object to the lesser offense instruction given to the jury." *Sola-Morales*, 300 Kan. at 886.

Here, the challenged instructions begin with the same transitional statement considered in *Sola-Morales*: "If you do not agree that the defendant is guilty of [offense], you should consider the lesser included offense of [offense]." 300 Kan. at 885-86. And like in that case, Collins was not convicted of one of the lesser offenses for which he complains he was prejudiced. So, the State has a valid argument that we need not

23

consider the merits of Collins' claim on the missing conjunctions. Later caselaw also supports this conclusion. See *State v. Pulliam*, 308 Kan. 1354, 1369-70, 460 P.3d 39 (2018) (refusing to reverse the defendant's conviction under a clear error standard because the defendant did not request an imperfect self-defense involuntary manslaughter instruction at trial).

Like in *Pulliam*, our Supreme Court has also applied the so-called "skip rule" to challenges of a district court's failure to provide a specific instruction. 308 Kan. at 1370. The Kansas Supreme Court recently explained the rule and its constraints:

> "Under this 'rule,' when a lesser included offense has been the subject of an instruction and the jury convicts of the greater offense, the reviewing court deems any error resulting from the failure to give an instruction on another still lesser included offense to be cured. The skip rule is not actually a rule but a logical deduction that may be drawn from jury verdicts in certain cases. This court does not apply the deduction automatically or mechanically, but considers it to be one factor, among many, when analyzing instructional issues for harmlessness." *State v. Nunez*, 313 Kan. 541, 553, 486 P.3d 606 (2021).

But unlike in *Pulliam* and *Sola-Morales*, the *Nunez* court refused to apply the skip rule to Nunez' claim. There, Nunez had sought an involuntary manslaughter instruction but it was not given, and the Supreme Court found the instruction contains an element not contained in the given instructions. The *Nunez* court was persuaded the instruction error "may have affected the outcome of the trial because the requested instruction could have focused the attention of the jury on the legitimacy of the initial self-defense, mitigated by the subsequent exertion of unnecessary force." 313 Kan. at 555. Distinct from the circumstances before us, though, is that in *Nunez* the involuntary manslaughter instruction was not given, and Nunez objected at trial to the district court's refusal to give the instruction, so his claim was reviewed not for clear error but under the lesser harmlessness standard. 313 Kan. at 555.

24

Collins' argument on appeal ignores the transitional language of the challenged jury instructions. As noted above, we presume juries follow instructions. *State v. Tague*, 296 Kan. 993, 1008, 298 P.3d 273 (2013). Because the transitional language was included in the challenged instructions given, we could find Collins did not meet his burden of showing the jury would have reached a different verdict but for the district court's erroneous instructions. The jury would only have considered those instructions if they did not agree Collins was guilty of unintentional second-degree murder.

All of that said, the holding in *Nunez* suggests it may be inappropriate to employ the transitional statement or skip rule when considering an involuntary manslaughter instruction because it contains different, applicable elements than the higher crimes. And we are not comfortable assuming the jury did not consider the lesser included offense instructions when the record shows the jury did give at least some consideration to the lesser manslaughter offenses. During its deliberations, the jury requested "the legal definitions of intent, knowingly, and manslaughter" and the district court's response is challenged on appeal as discussed below.

Regardless of our misgivings in relying on the transitional statements, though, we find Collins' claim fails because he cannot meet his burden to show clear error.

*Collins Did Not Show the District Court Committed Clear Error Instructing the Jury on the Lesser Offenses of Voluntary and Involuntary Manslaughter*

Collins has not shown the district court committed clear error when it instructed the jury on the lesser offenses. Even if we assume the district court erred, Collins' argument ignores the other instances when the jury heard instructions on the lesser offenses and their elements.

25

Collins admits the district court used the word "or" when orally instructing the jury. When giving jury instruction No. 12, the district court recited the second element as: "It was done upon a sudden quarrel, in the heat of passion *or* upon an unreasonable but honest belief that circumstances existed that justified deadly force in defense of a person." (Emphasis added.) But our Supreme Court has found a district court's oral instruction that correctly sets forth the law is insufficient to cure an erroneous written instruction because a jury would be expected to consider the written instructions during its deliberations. *Miller v. State*, 298 Kan. 921, 933-34, 318 P.3d 155 (2014).

Unlike in *Miller*, though, the district court's alleged erroneous instruction here does not undermine our confidence in the outcome of Collins' trial, because the court's oral instruction was not the only additional description given. Along with the district court's oral instructions, the jury also heard closing arguments from the prosecutor that thoroughly explained both challenged instructions. After detailing the elements for the lesser offenses, the prosecutor said:

> "When you look at those instructions you will see some of those are parentheticals, in the voluntary and involuntary manslaughter [instructions], those are different means of committing the crime. Where there is a parentheticals or parenthesis, *put an or in there. You don't have to prove both. It is one or the other*." (Emphasis added.)

Collins argues if instructed correctly, the jury would have leaned toward a voluntary manslaughter verdict because the trial evidence "strongly supported a finding that [he] committed homicide upon a sudden quarrel." In making his case for clear error, he relies on *State v. Lowry*, 317 Kan. 89, Syl. ¶ 2, 524 P.3d 416 (2023), to argue "'[a] sudden quarrel, or any unforeseen altercation' can support a voluntary manslaughter conviction."

And our Supreme Court in *Lowry* did make such findings when it considered whether the challenged instruction was factually appropriate:

"Applying [the elements of voluntary manslaughter], factual appropriateness for a voluntary manslaughter instruction requires some evidence, viewed in a light most favorable to the defendant, of an adequate provocation that deprives a reasonable person of self-control and causes that person to act out of passion, rather than reason. A sudden quarrel, or any unforeseen angry altercation, can fall into the definition of heat of passion and thus be sufficient provocation. [Citations omitted.]" 317 Kan. at 95.

But Collins ignores the *Lowry* court's next sentence: "But ongoing and protracted interactions do not usually provide factual support for a voluntary manslaughter instruction." 317 Kan. at 95. Here, there is some question whether this was an ongoing or protracted interaction, where the initial parking lot incident had ended but some trial evidence suggested Collins provoked the second incident on the stairway with the same actors. Also, unlike *Lowry*, here no party disputes the factual appropriateness of either instruction and these challenged instructions were given to the jury.

Ultimately, we are not firmly convinced the jury would have reached a different verdict had the written instructions included the word "or" between the parenthesized options. Had the jury determined that all parenthesized options—in either lesser offense instruction—must be proven yet found any of the parenthesized options unsupported by the evidence, the jury would simply have acquitted Collins of voluntary manslaughter because the State would have failed to prove every element of the offense. And Collins does not explain how acquitting him of a lesser charge resulted in convicting him of a greater charge.

While Collins can point to evidence to support his argument that he *could* have been convicted of either lesser charge, that is not enough to show the jury *would* have reached a different verdict had the instructions included conjunctions between

27

parentheticals. Given the combination of the district court's oral instructions, the prosecutor's explanation at closing, and Collins' failure to show how confusion on the lesser offenses resulted in a more serious conviction, he fails to meet his burden of showing the district court committed clear error in its instructions on the lesser offenses of voluntary and involuntary manslaughter.

THE DISTRICT COURT DID NOT ERR WHEN
RESPONDING TO THE JURY'S FIRST QUESTION

Collins next argues the district court erred when it referred the jury back to its instructions in response to the jury's first question. His argument assumes we find in his favor under the previous issue regarding the jury instructions on voluntary and involuntary manslaughter. In response, the State argues the invited error doctrine should apply to Collins' claim, or alternatively argues the record does not support his arguments.

*The Invited Error Doctrine*

In *State v. Douglas*, 313 Kan. 704, 708, 490 P.3d 34 (2021), the Kansas Supreme Court reviewed the invited-error doctrine in the context of jury instructions. The *Douglas* court harmonized its prior precedent to clarify that "the doctrine's application turns on whether the instruction would have been given—or omitted—but for an affirmative request to the court for that outcome later challenged on appeal." 313 Kan. at 708. As such, the court found that "[t]he ultimate question is whether the record reflects the defenses' action *in fact induced* the court to make the claimed error." 313 Kan. at 708.

In another case, our Supreme Court expanded on the *Douglas* precedent, adding: "Mere acquiescence to a district court instruction does not warrant the application of the invited-error doctrine. The same rationale applies equally when assessing the doctrine's

applicability to a district court's response to a jury question. [Citation omitted.]" *State v. Martinez*, 317 Kan. 151, 527 P.3d 531 (2023).

The State argues the invited-error doctrine should apply without providing any argument. But the record shows this argument is unpersuasive based on defense counsel's mere acquiescence to the district court's response to the jury's question.

As previously noted, the jury first asked during deliberations: "Can we have the legal definitions of intent, knowingly, and manslaughter?" Collins' fifth claim on appeal only challenges the district court's response to the final piece of this first question—the definition of manslaughter.

After receiving the question, the district court went on the record in the presence of the attorneys and Collins. Offering a potential response to the question, the district judge proposed, "My suggested response is, see Instructions Number 9, 12 and 13. Any response from the attorneys?" Defense counsel asked for clarification on which instruction numbers the judge wanted to include, and then immediately agreed those instruction numbers were "[c]orrect." The judge then asked, "You agree?" and defense counsel said, "Yes." No further discussion occurred between defense counsel and the district court regarding the definition of manslaughter.

The record shows Collins' defense counsel simply approved the district court's reference to the jury instructions but did not request or suggest the court's response. While defense counsel did inquire into which instruction numbers the district court intended to use as a reply, defense counsel nevertheless immediately acquiesced upon asking for clarification. As a result, we do not find the invited error doctrine applies here.

*Collins Did Not Show the District Court Committed Clear Error in Responding to the Jury's Question*

Generally, appellate courts review a district court's response to a jury-submitted question for an abuse of discretion, using a two-step analysis. *State v. Walker*, 308 Kan. 409, 423, 421 P.3d 700 (2018). The court first undertakes a de novo review to decide if the district judge either failed to respond or gave an erroneous response to the question. Then, if the trial court responded to the jury question, we review the sufficiency or appropriateness of the response for abuse of discretion. A district court's response constitutes an abuse of discretion when it is objectively unreasonable or when the response includes an error of law or fact. 308 Kan. at 423. But when a defendant does not object at trial to the district court's response referencing a jury instruction, appellate courts apply the clear error standard under K.S.A. 22-3414(3). 308 Kan. at 424 (citing *State v. Lewis*, 299 Kan. 828, 855, 326 P.3d 387 [2014] [applying clear error to jury instruction issues arising on appeal out of the district judge's response to a deliberating jury's question]).

Here, Collins applies an abuse of discretion standard to argue the district court's response was unreasonable or an error of law. He then argues the district court's erroneous instruction constitutes clear error that required reversal of his convictions and a new trial. First, Collins reasons that if the district court realized its element instructions were confusing, then it acted unreasonably by referring the jury back to the same instructions. Second, Collins argues the district court made an error of law, regardless of realization, because its response was predicated upon an erroneous instruction.

But Collins' arguments are not persuasive. It was not unreasonable for the district court to refer to its own instructions when it believed the instructions were legally appropriate and which provided the requested definition. And having found in the previous section that Collins did not show the district court committed clear error when it

instructed the jury on the elements of voluntary and involuntary manslaughter, it follows that Collins has not shown the district court made an error of law when it referred to those same instructions to define manslaughter.

Absent proving such errors, Collins has not shown the district court committed clear error when it responded to the jury's question.

## THE DISTRICT COURT DID NOT ERR IN RESPONDING TO THE JURY'S SECOND QUESTION

As in his previous claim, Collins argues for the first time on appeal that the district court committed clear error when it responded to a second question from the jury. The jury's question sought the "[d]efinition of lawful act in unlawful manner and extreme indifference to the value of human life." The court responded to the jury's request with: "Part 1, Jurors' common knowledge and experience and Instructions 15-17. Part 2, Jurors' common knowledge and experience and Instruction 11." Both parties' counsel agreed to that response. Collins now argues the district court's response was "non-responsive, and thus, erroneous."

In response, the State reasserts its invited-error argument, but admits that "[u]nder *Martinez* . . . it would appear that defendant is entitled to review of this issue," because defense counsel merely agreed to the response, and had not requested it. The State alternatively contends a panel of this court has rejected a similar argument and argues the merits of Collins' claim are not persuasive because the prosecutor addressed the phrase in closing argument.

Collins begins his claim by preliminarily acknowledging "some legal phrases are self-defining, and thus, do not require judicial definition." Even so, he contends that a "'lawful act in an unlawful manner' is not such a phrase." Collins points out that our

31

Supreme Court has found a person may commit a lawful act in an unlawful manner, within the meaning of Kansas' involuntary manslaughter statute, when the person uses excessive force in an otherwise lawful act of self-defense. See *Nunez*, 313 Kan. at 551 ("Involuntary manslaughter in the form of imperfect self-defense, that is, killing based on a 'lawful act [committed] in an unlawful manner,' has been characterized as a 'lawful exercise of self-defense, but with excessive force.'"). But he suggests most jurors are unaware of caselaw, so they would not make this connection.

Collins further argues the district court's answer, referring the jury to its instructions, only informed jurors of the legal principles applicable to Collins' self-defense claim, but did not tell the jury "what sort of conduct might warrant a conviction on the lesser included offense of involuntary manslaughter."

As Collins notes, *Nunez* supports his general contention that a district court errs when it refuses to give an involuntary manslaughter instruction that is factually and legally appropriate. 313 Kan. at 554-55. And, the *Nunez* court reasoned that the specific "excessive force instruction" was factually and legally appropriate. 313 Kan. at 554-55. But here, unlike in *Nunez*, Collins does not argue the district court erred by failing to give a specific instruction on using excessive force as a means of committing involuntary manslaughter. As repeatedly stated, the district court did provide such instruction in the involuntary manslaughter instruction which gave the option that "[t]he killing was done . . . during the commission of a lawful act in an unlawful manner", and in response to the jury's question on the definition of that phrase referring the jury back to the self-defense instructions Nos. 15 through 17. And as the State points out, the involuntary manslaughter instruction here mirrors the PIK instruction for that crime and included excerpts from the PIK instruction to define "recklessly." See PIK Crim. 4th 54.180 (Involuntary Manslaughter) and PIK Crim. 4th 52.010 (2021 Supp.) (Culpable Mental State).

The State also persuasively points the panel to a prior decision wherein another panel of this court addressed a similar claim—confusingly, the defendant has the same last name as Collins. See *State v. Collins*, No. 117,409, 2018 WL 5305661 (Kan. App. 2018) (unpublished opinion) ("*Shawn Collins*" for clarity). In *Shawn Collins*, a jury convicted the defendant of voluntary manslaughter but was also instructed on the lesser offense of involuntary manslaughter. On appeal, the defendant argued the district court failed to properly instruct the jury on the lesser offense of involuntary manslaughter because the instructions provided "did not properly instruct the jury on the specific meaning of certain terms." 2018 WL 5305661, at *9. Relevant here, the defendant argued the instruction "should have included additional language about imperfect self-defense." 2018 WL 5305661, at *10.

The panel rejected that argument based on a clear error standard (the defendant failed to raise the claim below) because the instruction matched the PIK instruction and the defendant's argument "merely speculate[d]" the jury may have been confused by the district court's failure to define certain terms in the instruction. 2018 WL 5305661, at *10. And notably, the *Shawn Collins* court relied on the rule from *Sola-Morales* to find any error in instructing on a lesser offense, when a defendant is convicted of a higher offense, "is likely to be harmless." 2018 WL 5305661, at *10; *Sola-Morales*, 300 Kan. at 885-86.

As noted above, the Kansas Supreme Court "'strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions.'" *Butler*, 307 Kan. at 847. As the *Shawn Collins* panel reasoned, the involuntary manslaughter instruction here is consistent with both the involuntary manslaughter statute and pattern instruction. See K.S.A. 21-5404(a); PIK Crim. 4th 54.180.

To Collins' point here, the first comment to the PIK Crim. 4th 54.180 notes: "The use of excessive force may be found to be an 'unlawful manner' of committing the 'lawful act' of self-defense, and thereby supply an element of involuntary manslaughter. *State v. Gregory*, 218 Kan. 180, 542 P.2d 1051 (1975)." But despite this method of proof existing for nearly 50 years, the PIK instructions do not suggest district courts use this definition to instruct the jury. And in *Shawn Collins*, at least one other Kansas court has refused to find a district court errs when it fails to provide an imperfect self-defense definition to an involuntary manslaughter instruction. See 2018 WL 5305661, at *10.

So, while Collins can point to some support suggesting an "excessive use" definition instruction may have been legally and factually appropriate, he does not make a persuasive argument to suggest the district court committed clear error when it did not provide that definition in response to the jury's second question. As noted, Collins argues the district court erred because it did not provide a meaningful response to the jury's question. But he simultaneously admits the court was "on the right track when it referred the jury back to its initial instructions on defense of a person."

Collins relies on *State v. Jones*, 41 Kan. App. 2d 714, Syl. ¶ 3, 205 P.3d 779 (2009), to argue the district court's response was "non-responsive." Although the first part of that syllabus paragraph supports his argument, he ignores much of the relevant circumstances. The full paragraph states:

> "A trial court may not ignore a jury's request submitted pursuant to K.S.A. 22-3420(3) but must respond in some meaningful manner or seek additional clarification or limitation of the request. It is only when the trial court makes no attempt to provide a meaningful response to an appropriate request or gives an erroneous response that the mandatory requirement of K.S.A. 22-3420(3) is breached. Once the trial court attempts to give an enlightening response to a jury's request or seeks additional clarification or limitation of the request, then any issue as to the sufficiency or propriety of the response is one of abuse of discretion by the trial court." 41 Kan. App. 2d 714, Syl. ¶ 3.

34

As noted in the above syllabus paragraph, this particular holding was based on the plain language of a prior version of the statute—K.S.A. 22-3420(3) (Furse). Under K.S.A. 22-3420(3) (Furse):

"'After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of the law shall be given, or the evidence shall be read or exhibited to them in the presence of the defendant, unless he voluntarily absents himself, and his counsel and after notice to the prosecuting attorney.'" See *Jones*, 41 Kan. App. 2d at 721.

But the Kansas Legislature amended this subsection in 2014, amending a district court's duty under the prior version from "information on the point of law shall be given" to a more general "shall respond to all questions from a deliberating jury in open court or in writing." K.S.A. 22-3420(d). The statute now reads:

"The jury shall be instructed that any question it wishes to ask the court about the instructions or evidence should be signed, dated and submitted in writing to the bailiff. The court shall notify the parties of the contents of the questions and provide them an opportunity to discuss an appropriate response. The defendant must be present during the discussion of such written questions, unless such presence is waived. The court shall respond to all questions from a deliberating jury in open court or in writing. In its discretion, the court may grant a jury's request to rehear testimony. The defendant must be present during any response if given in open court, unless such presence is waived. Written questions from the jury, the court's response and any objections thereto shall be made a part of the record." K.S.A. 22-3420(d).

None of the above provides the support Collins proposes. While he may have legal support to argue a district court is to respond in a meaningful manner, he cannot show the district court here did not attempt to do so, as required by *Jones*. Here, the district court did attempt to provide a meaningful response to the jury's question. The district court

35

addressed the question and its possible answer over nearly four pages of transcript. And it ultimately concluded, "Okay, so why don't we do this, regarding lawful act in an unlawful manner, common knowledge and experience and Instructions 15 and 17? Because that's the legal versus illegal act that we're talking about, that's the self-defense."

But outside of suggesting the exact response he wanted the district court to provide in response to the jury's question—and notably without any argument to this end by defense counsel at trial—Collins proffers no support to suggest the district court response was nonresponsive under *Jones*. As his authority states: "It is only when the trial court makes no attempt to provide a meaningful response . . . ." that the statute is violated. 41 Kan. App. 2d 714, Syl. ¶ 3. Here, the district court attempted to provide a meaningful response—it was simply not the specific response that Collins now seeks on appeal. And Collins does not explain why it should be the district court's responsibility to provide this exact definition of law upon a question by the jury.

Under Collins' logic, a finding of error in his favor would require every district court to respond to jury's questions with any factually and legally appropriate response. This is not what the statute requires. See K.S.A. 22-3420(d). Presumably, if Collins wanted the jury to know that excessive force was a means of unlawfully committing the otherwise lawful act of self-defense under the involuntary manslaughter statute, then his defense counsel should have made such an argument to the jury. Or, he could have requested such a definition in his involuntary manslaughter instruction.

Collins does not submit an alternative argument that the district court abused its discretion when it responded to the jury's question, despite briefly acknowledging this avenue for relief at the beginning of his argument. See *Martinez*, 317 Kan. at 169 ("We review a district court's response to a jury-submitted question for an abuse of discretion.). As a result, Collins has waived any claim the district court abused its discretion in responding to the jury's second question. See *State v. Meggerson*, 312 Kan. 238, 246, 474

36

P.3d 761 (2020) (holding points raised incidentally in a brief but not argued therein is deemed waived or abandoned).

In summary, Collins did not show the district court committed clear error when it did not respond to the jury's second question with a response that informed the jury that the lawful act of self-defense can be committed in an unlawful manner by the use of excessive force. The court provided a responsive answer and Collins does not argue the district court abused its discretion.

### CUMULATIVE ERROR DID NOT DEPRIVE COLLINS OF A FAIR TRIAL

In his final issue on appeal, Collins argues we must reverse his convictions because the numerous alleged trial errors caused substantial prejudice and denied him a fair trial. The State argues Collins' claim of cumulative error is not supported when his other claims have failed.

Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. *State v. Hirsh*, 310 Kan. 321, 345, 446 P.3d 472 (2019). In assessing the cumulative effect of errors during the trial, appellate courts examine the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. 310 Kan. at 345-46.

But when an appellate court finds no errors exists, the cumulative error doctrine cannot apply. *State v. Lemmie*, 311 Kan. 439, 455, 462 P.3d 161 (2020). And a single, nonreversible error cannot support reversal under the cumulative error doctrine. *State v. Ballou*, 310 Kan. 591, 617, 448 P.3d 479 (2019).

37

Here, our only potential finding of error was on Collins' first prosecutorial error claim (the prosecutor improperly argued the jury could infer his guilt), but we found the error to be harmless. We merely assumed error on Collins' second prosecutorial error claim to find it also harmless and found no errors in his instructional claims or jury response claims. So, we have no other errors to cumulate. Even if we had found error in the jury instructions, our Supreme Court has recently found that K.S.A. 22-3414(3) prevents appellate courts from considering the effect of instructional errors raised for the first time on appeal within a claim of cumulative error. *State v. Waldschmidt*, 318 Kan. 633, 659-62, 546 P.3d 716 (2024). Collins' attempts to show prejudicial error through small claims of trial errors were not persuasive to show he was denied a fair trial.

Convictions affirmed, sentence vacated in part, and case remanded with directions.